**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                  No. 99-4077

MACULA ANTY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, District Judge.
(CR-98-7-F)

Argued: December 3, 1999

Decided: February 14, 2000

Before NIEMEYER and WILLIAMS, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Williams and Senior Judge Hamilton
joined.

_____

**COUNSEL**

**ARGUED:** Anne M. Hayes, Assistant United States Attorney,
Raleigh, North Carolina, for Appellant. Rosemary Godwin, Raleigh,
North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole,
United States Attorney, Michael G. James, Assistant United States
Attorney, Raleigh, North Carolina, for Appellant.

_____

**OPINION**

NIEMEYER, Circuit Judge:

After Macula Anty was convicted of conspiring to distribute cocaine, possession of cocaine with intent to distribute, and distribution of cocaine, she made a motion for a mistrial, contending that during her trial the government improperly introduced the testimony of a paid informant, in violation of 18 U.S.C. § 201(c)(2) (prohibiting a person from giving "anything of value to any person, for or because of [that person's] testimony"). The district court agreed that the government's use of the paid informant's testimony against Anty violated § 201(c)(2) and granted her motion for a mistrial. On the government's appeal, we conclude that § 201(c)(2) does not prohibit the government from using the testimony of a paid informant and therefore reverse and remand this case for further proceedings.

I

Shortly before Anty's trial on drug charges, Anty filed a motion to suppress the testimony of two potential government witnesses who had entered into plea agreements with the government. She based her motion on the decision in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), rev'd en banc, 165 F.3d 1297 (1999), which held that government promises of leniency to a witness in exchange for testimony violated 18 U.S.C. § 201(c)(2). The district court denied Anty's motion with leave to renew it in the event of a conviction.

At trial, Anty objected to the testimony of another government witness, Selma Jerome, because he was a paid informant whose arrangement with local law enforcement authorities required him to be available to testify at trial. The district court permitted Jerome to testify but stated that it would revisit the issue if Anty were convicted.

Following her conviction, Anty filed a post-trial motion for a "mistrial," arguing that the testimony of Jerome and of an accomplice witness should have been suppressed because it was obtained in violation of 18 U.S.C. § 201(c)(2). While the district court rejected Anty's claim that the accomplice witness's testimony should have been sup-

2

pressed, it concluded that Jerome's testimony had been obtained in violation of 18 U.S.C. § 201(c)(2) and should have been suppressed. The court then invited the parties to brief whether it should order a mistrial.

During the trial, Jerome acknowledged that he was a paid informant who had set up the sting transaction on November 7, 1997, for which Anty was convicted. He testified that Anty personally handled a kilogram of cocaine on that date. Anty's counsel cross-examined Jerome -- as well as local police officers who had reached the arrangement with Jerome -- about the compensation that Jerome received for his assistance and used the evidence of those payments to attack Jerome's credibility in closing arguments before the jury. The district court instructed the jury with respect to the payments that:

> The testimony of an informant, someone who provides evidence against someone else for money . . . or for other personal reason or advantage, must be examined and weighed by the jury with greater care than the testimony of a witness who is not so motivated. The jury must determine whether the informer's testimony has been affected by self-interest, or by the agreement he has with the government, or his own interest in the outcome of this case, or by prejudice against the defendant.

The record reveals that Jerome first contacted the Dunn, North Carolina, Police Department in early October 1997 to alert them that he had information about drug dealing in Sampson County, North Carolina. The Dunn police referred Jerome to authorities in Sampson County but asked Jerome to contact the Dunn police if he became aware of any narcotics activity taking place in Dunn.

Approximately a week later, Jerome contacted the Dunn police again to inform them that drug dealers were operating out of a hotel in Dunn. The police arranged for Jerome to perform a controlled purchase of two ounces of crack cocaine from the dealers, and Jerome was paid $500 for his assistance, even though he offered to work for free because, he said, his father had been killed by drug dealers.

Based on Jerome's successful undercover purchase, the Dunn police decided to use Jerome to set up two sting operations involving

3

larger amounts of cocaine. The second sting operation, performed on November 7, 1997, led to the arrest of Anty and her co-conspirators. For his assistance in the two sting operations, as well as his willingness to testify at trial, Jerome was paid $10,000. He received $6,000 on November 7, 1997 from the Dunn Police Department; $2,000 on November 17 from the Sampson County Sheriff's Department; and a final installment of $2,000 in May 1998 from the Sanford Police Department. The police testified that they determine the amount of compensation an informant will receive by evaluating the information provided and the benefits to be derived from the information. When a drug deal is involved, the officers stated they also consider the quantity of drugs and the identity of the persons arrested.

Based on these facts, the district court concluded, in an order entered November 17, 1998, that Jerome had been paid for his testimony in violation of 18 U.S.C. § 201(c)(2) and that his testimony should be suppressed. Thereafter, following the parties' briefing, the court granted Anty's motion for a mistrial by order entered January 25, 1999. It also concluded that "the Double Jeopardy Clause of the Fifth Amendment does not bar retrial" and directed the clerk to set the matter for retrial during the February 22, 1999 term of court. The government took this interlocutory appeal from the court's January 25, 1999 order granting Anty's motion for a mistrial based on its November 17, 1998 order granting Anty's motion to suppress the testimony of Jerome. See 18 U.S.C. § 3731.

II

The government contends that the district court erred in concluding that it was barred from presenting the testimony of informants who were paid money to assist the government in its criminal investigation and to testify at trial. It argues that a well-established body of law authorizes the government to pay informants to provide information and to testify in the prosecution of crimes, and that Congress, in enacting 18 U.S.C. § 201(c)(1), never intended to criminalize the practice. Secondarily, the government contends that a violation of 18 U.S.C. § 201(c)(2) "would not warrant the application of an exclusionary rule." It argues that the suppression of an informant's testimony is "an excessive and unnecessary form of relief for a violation of § 201(c)(2)."

4

Anty contends that the mistrial was appropriate because the government offered the testimony of a paid informant and 18 U.S.C. § 201(c)(2) "plainly states that it is unlawful to offer or give anything of value for or because of testimony in a trial." Noting that the informant in this case received cash payments for assisting the government in uncovering the criminal conduct and for testifying in court, Anty argues that the district court acted within its authority by "excluding the testimony . . . and granting a new trial as a remedy to deter future violations of the federal gratuities statute."

The issue of whether § 201(c)(2) prohibits the government from offering the testimony of a paid informant when giving testimony is part of the arrangement with the informant is one of first impression in this circuit. Resolution of this dispute involves the proper interpretation of 18 U.S.C. § 201(c)(2), which provides:

> Whoever . . . directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . authorized by the laws of the United States to hear evidence or take testimony . .. shall be fined under this title or imprisoned for not more than two years, or both.

The original enactment of this version of the statute in 1962 constituted part of an effort by Congress "to strengthen the criminal laws relating to bribery, graft, and conflicts of interest." S. Rep. No. 87-2213, at 1, reprinted in 1962 U.S.C.C.A.N. 3852, 3852; see also Pub. L. No. 87-849, 76 Stat. 1119 (entitled "An Act to strengthen the criminal laws relating to bribery, graft, and conflicts of interest, and for other purposes" and captioning § 201 "Bribery of public officials and witnesses"). Continuing a strong prohibition against the bribery of witnesses was an important part of Congress' effort to protect the integrity of the judicial process. In this respect, § 201 supplements other statutes aimed at assuring that only truthful testimony is received from witnesses in court. See, e.g., 18 U.S.C. § 1512 (prohibiting witness tampering); 18 U.S.C. § 1622 (prohibiting subornation of perjury).

5

In response to the Tenth Circuit's panel decision in <u>United States v. Singleton</u>, 144 F.3d 1343 (10th Cir. 1998), criminal defendants have repeatedly relied on § 201(c)(2) to argue that the government is prohibited from entering into any deal with a witness that includes giving testimony against a defendant, despite the fact that the Tenth Circuit, sitting <u>en banc</u>, reversed its earlier position. <u>See United States v. Singleton</u>, 165 F.3d 1297 (10th Cir. 1999) (<u>en banc</u>). After considering the "Singleton" argument, virtually every circuit court has rejected it. And recently, in <u>United States v. Richardson</u>, 195 F.3d 192 (4th Cir. 1999), we joined those courts, holding that "the term `whoever' as used in § 201(c)(2) does not include the United States acting in accordance with its statutory authority to use immunity, leniency, and plea agreements to obtain truthful testimony." 195 F.3d at 196-97.**1** We based our analysis on the rule stated in <u>Nardone v. United States</u>, 302 U.S. 379, 383-84 (1937), that a general term should be read to exclude the United States when to do otherwise "would deprive the sovereign of a recognized or established prerogative" or would "work obvious absurdity." In applying this rule, we reasoned as follows:

> To interpret § 201(c)(2) to include the United States would implicitly repeal other statutes and rob the government of its long-standing prerogatives to use immunity and leniency in plea bargaining to obtain truthful testimony from one criminal against another -- testimony that in many cases is essential to the enforcement of law and the promotion of justice.
>
> * * *
>
> Interpreting § 201(c)(2) to apply to the government would also work an obvious absurdity as it would lead to the conclusion that Congress, through statutes such as 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and 18 U.S.C. §§ 6002-6003, is authorizing practices that it has prohibited in 18 U.S.C. § 201(c)(2).

<u>Richardson</u>, 195 F.3d at 196.

_____

**1** The district court did not have the benefit of <u>Richardson</u> and the many circuit court decisions that have address the " <u>Singleton</u>" issue.

6

While the holding of Richardson does not directly dispose of this case, which involves the payment of money to informants for assisting in the investigation and prosecution of a criminal offense, including the giving of testimony, the reasoning in Richardson is apropos. To interpret § 201(c)(2) to preclude the payment of money to informants to assist in investigating and prosecuting crimes, by giving truthful testimony, would not only "rob the government of its long-standing prerogative[ ]" to do so as established by statute and recognized practice, it would also "work an obvious absurdity" in implicitly repealing numerous statutes that authorize the payment of expenses, fees, and rewards to witnesses. Id.; see also Nardone, 302 U.S. at 383-84. More important, the statute itself appears to preserve the government's prerogative to pay witnesses "witness fees provided by law." See 18 U.S.C. § 201(d).

Through a broad range of statues, Congress has authorized the payment of expenses, fees, and rewards to cooperating witnesses. Section 1821 of Title 28 authorizes generally the payment of per diem, mileage, and subsistence expenses to witnesses, as does Federal Rule of Criminal Procedure 17(b) (authorizing the payment of costs and expenses for subpoenaed witnesses). See also 18 U.S.C. § 3521(b) (authorizing the payment of expenses for witnesses under relocation and protection statute); 18 U.S.C. § 3195 (authorizing payment of all "fees and costs of every nature" involving extradition). Congress has also authorized the payment of fixed attendance fees to witnesses. See 28 U.S.C. § 1821(b) (authorizing the payment of a $40 "attendance fee"); Fed. R. Crim. P. 17(d) (requiring payment of attendance fee and mileage on serving subpoena).

Additionally, Congress has authorized the payment of rewards in indeterminate amounts for "information" and"services" to assist in the apprehension, prosecution, or conviction of violators of various criminal laws. See, e.g., 18 U.S.C. § 1751(g) (authorizing payments for "information and services" concerning violations of statute prohibiting the assassination, assault, or kidnapping of the President); 18 U.S.C. § 3056(c)(1)(D) (authorizing Secret Service to pay "rewards for services and information" assisting the Secret Service in its law enforcement efforts); 18 U.S.C. § 3059(b) (funding the Attorney General's payment of rewards for "service or information" to apprehend specified fugitives); 18 U.S.C. § 3059A(a)(1) (authorizing Attorney

7

General to "make payments" for information leading to prosecution of financial-institutions offenses); 18 U.S.C. § 3059B (authorizing payment of reward to "any individual who assists the Department of Justice in performing its functions"); 19 U.S.C.§ 1619 (authorizing rewards for "information" regarding violations of custom laws); 21 U.S.C. § 886(a) (authorizing payments in connection with drug enforcement of "such sum or sums of money as[the Attorney General] may deem appropriate, without reference to any moieties or rewards to which such person may otherwise be entitled by law"); 26 U.S.C. § 7623 (authorizing payments deemed necessary to detect and prosecute tax offenders). In authorizing the payment of rewards for information, assistance, and services in the enforcement of criminal statutes, Congress surely must have contemplated payments to informants for assisting both in investigations and by testifying.

In this case, the $10,000 in payments made to Jerome, if properly imputed to the government -- a fact that we do not decide but assume for purposes of this discussion -- could well be a fee or reward for assistance in drug enforcement efforts, as authorized by 21 U.S.C. § 886(a), or for assisting the Department of Justice in performing its functions, as authorized by 18 U.S.C. § 3059B. But even if such payments do not constitute "fees" expressly excepted from 18 U.S.C. § 201(c)(2) by § 201(d),**2** the government's use of the payments to uncover criminal conduct and obtain truthful court testimony is not prohibited by § 201(c)(2) under the more general reasoning of Richardson.

The use of informants to uncover criminal conduct and to prosecute violators is a long-standing and established practice. The Supreme Court, quoting Judge Learned Hand, has observed that"`Courts have countenanced the use of informers from time immemorial; in cases of conspiracy, or in other cases when the crime consists of preparing for another crime, it is usually necessary to rely upon them or upon

_____

**2** A broad reading of the term"witness fees" as used in § 201(d) to apply to any lawful payment to a witness finds support in the House Report that accompanied the 1962 enactment of the provision. See H.R. Rep. No. 87-748, at 19 (1961) ("[Section 201(d)] makes it clear that the subsections dealing with witnesses will not prohibit payments to witnesses otherwise proper and lawful") (emphasis added).

8

accomplices.'" Hoffa v. United States, 385 U.S. 293, 311 (1966) (quoting United States v. Dennis, 183 F.2d 201, 224 (2nd Cir. 1950), aff'd, 341 U.S. 494 (1951)). In United States v. Bagley, 473 U.S. 667 (1985), the Supreme Court considered whether the prosecution's failure to disclose the compensation arrangement of a paid informant constituted a Brady violation. Although the informant in that case was paid $300 under an arrangement that expressly required him "to testify against the violator in federal court," the Court raised no question about the legality of the arrangement. Id. at 671.

Similarly, we have regularly reviewed trials in which paid government informants served as witnesses, considering such issues as paid informants' competency as witnesses, their credibility, the necessity for cautionary jury instructions regarding their credibility, and the disclosure of their status to the defense. In none of the cases did we express any doubt about the legality of the practice. See, e.g., United States v. Mason, 993 F.2d 406, 409-10 (4th Cir. 1993); United States v. Brooks, 928 F.2d 1403, 1409-10 (4th Cir. 1991); United States v. Chavis, 880 F.2d 788, 793-94 (4th Cir. 1989); United States v. Melia, 691 F.2d 672, 675-76 (4th Cir. 1982); United States v. Hung, 667 F.2d 1105, 1107 (4th Cir. 1981); United States v. Gregorio, 497 F.2d 1253, 1261 (4th Cir. 1974); Meyers v. United States, 207 F.2d 413, 413 (4th Cir. 1953) (per curiam).

More generally, a pattern jury instruction has been developed to address the credibility of testimony by paid informants, indicating that the use of such testimony is a common and accepted practice. See Edward J. Devitt et al., Federal Jury Practice and Instructions § 15.02 (1992). And the district court gave such an instruction in this case.

Section 201(c)(2), which targets, through concededly broad language, the bribery of witnesses by means of an illegal gratuity,**3** surely

_____

**3** The offenses covered by 18 U.S.C. § 201, captioned "Bribery of public officials and witnesses," include the traditional bribery of a witness, involving a payment made to a witness specifically to influence testimony, see § 201(b)(3), as well as the lesser included offense of illegal gratuity, involving the payment of a witness "for or because of" such testimony, see § 201(c)(2). Cf. United States v. Muldoon, 931 F.2d 282, 289 (4th Cir. 1991) (noting that an illegal gratuity to a public official, as prohibited by § 201(c)(1)(a), is a lesser included offense of bribery of a public official, as prohibited by § 201(b)(1)).

9

was not intended to bar the long-standing practice of paying informants to assist the government in uncovering criminal conduct and prosecuting such conduct in court with truthful testimony. By the same token, Congress could not have intended an implicit repeal of the statutes that explicitly authorize these practices in specified circumstances.**4** The prosecution of crime by authorized government

_____

**4** Even though the language of 18 U.S.C. § 201(c)(2) is remarkably broad, to make sense of it, the prohibition must be understood to address efforts to corrupt or to influence testimony. The statute itself exempts any payment of "witness fees" and expenses "provided by law." See 18 U.S.C. § 201(d). Moreover, while the current language prohibiting payment "for or because of the testimony" of a witness does not explicitly limit its coverage to influenced testimony, a careful retracing of the statute's stylistic development since 1909 reveals no effort to alter the original intent of protecting the integrity of witnesses' testimony. The precedessor version of § 201's provisions relating to witnesses, for example, consisted of two separate provisions, one aimed at those who pay for testimony and the other aimed at witnesses who receive such payments. See 18 U.S.C. §§ 209, 210 (1958 ed.). Both, however, prohibited at their core the "influencing" of testimony. The provision aimed at paying to influence testimony provided in relevant part:

> Whoever . . . gives or offers any money or thing of value, or . . . any other bribe [to] a witness . . . upon any agreement or understanding that his testimony shall be influenced thereby . . . shall be fined . . . or imprisoned . . . or both.

18 U.S.C. § 209 (1958 ed.) (emphasis added). Similarly, § 210 made it unlawful for a witness to receive

> a bribe, upon any agreement or understanding that his testimony shall be influenced thereby . . . or because of such testimony . . . .

18 U.S.C. § 210 (1958 ed.) (emphasis added). The prohibition against payment "because of" testimony undoubtedly was intended to extend the scope of the statute to cover not only agreements and understandings, but also unilateral payments, i.e. gratuities, for or because of "influenced" testimony. In any event, the target was not payments for or because of truthful testimony, but payments for or because of "influenced" or tainted testimony -- testimony that amounted to a corruption of the truth. By all indications, the 1962 revisions of these provisions, creating the language of current § 201(c)(2), were intended to be primarily stylistic. See S. Rep. No. 87-2213, reprinted in 1962 U.S.C.C.A.N. 3852, 3853 (indicating that the effort was to collect in one provision and make uniform the earlier disparate provisions related to bribery). The revisions do not indicate that Congress intended to broaden the scope of the prohibition to extend to payments made "for or because of" innocent conduct.

10

agents with authorized mechanisms lies at the heart of the public's interest in having the criminal laws enforced, and when interpreting § 201(c)(2), we must not presume that Congress prohibited government agents from using these mechanisms unless such a prohibition is unmistakably clear in the language of the statute. See United States v. California, 297 U.S. 175, 186 (1936) (recognizing the "canon of construction that a sovereign is presumptively not intended to be bound by its own statute unless named in it") (citing Dollar Savings Bank v. United States, 86 U.S. (19 Wall.) 227, 239 (1874)), cf. Nardone, 302 U.S. at 383-84. The general prohibition of § 201(c)(2) -- "whoever . . . gives . . . anything of value to any person, for or because of the testimony . . . to be given by such person as a witness upon a trial" -- does not unmistakably manifest an intent by the sovereign to bind itself to the prosecutorial limitations urged by Anty in this case. See also Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Accordingly, we hold that 18 U.S.C. § 201(c)(2) does not prohibit the United States from acting in accordance with long-standing practice and statutory authority to pay fees, expenses, and rewards to informants even when the payment is solely for testimony, so long as the payment is not for or because of any corruption of the truth of testimony. In so holding, we join the two other circuits to have considered this issue. See United States v. Barnett , 197 F.3d 138, 144-45 (5th Cir. 1999); United States v. Albanese, 195 F.3d 389, 394-95 (8th Cir. 1999); United States v. Harris, 193 F.2d 957 (8th Cir. 1999).

Legitimizing the payment of money to witnesses can be a risky business, particularly when the payment greatly outstrips any anticipated expense. The payment becomes a reward, and as with any reward, the danger is that the recipient, out of gratitude or greed, might be inclined to alter or bend the truth. Accordingly, the government must act with great care when engaging in the practice of paying for more than expenses. Moreover, a defendant's right to be apprised of the government's compensation arrangement with the witness, see Bagley, 473 U.S. at 683-84, and to inquire about it on cross-examination, cf. Davis v. Alaska, 415 U.S. 308, 315-17 (1974), must be vigorously protected. The adversary process must be allowed to probe for possible corruption of testimony, because it is this corruption at which 18 U.S.C. § 201(c)(2) aims.

In this case, there is no evidence in the record that government prosecutors (or state police officials) sought to"bribe" Jerome to corrupt his testimony. On the contrary, Jerome volunteered to assist, and the police thereupon used him as a paid informant to uncover criminal conduct and to give testimony about the conduct in court. Moreover, Anty does not argue that Jerome's testimony was false. She argues rather that the evidence should have been excluded solely because Jerome received payment for his assistance, including his testimony at trial.

Because we find no violation of § 201(c)(2), we need not reach the question of whether the appropriate sanction for such a violation is the exclusion of the testimony at trial. We reverse the district court's orders of November 17, 1998 (finding a violation of 18 U.S.C. § 201(c)(2)) and January 25, 1999 (ordering a mistrial) and remand the case to the district court for further proceedings.

REVERSED AND REMANDED

12