

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-2000

# United States v. Harris

Precedential or Non-Precedential:

Docket 99-1026

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Harris" (2000). *2000 Decisions.* Paper 79.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/79

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 13, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1026

UNITED STATES OF AMERICA

v.

VINCENT ERIC HARRIS,

        Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 98-cr-00080-1)
District Judge: Honorable Harvey Bartle, III

Argued March 9, 2000

Before: SCIRICA, ALDISERT and COWEN, Circuit  Judges

(Filed April 13, 2000)

        Sara Webster, Esq. (Argued)
        Mellon, Webster & Mellon
        87 North Broad Street
        Doylestown, PA 1890l

         Counsel for Appellant

        Robert R. Calo, Esq. (Argued)
        Office of the United States Attorney
        615 Chestnut Street
        Philadelphia, PA 19106

         Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge.

In this appeal Vincent Harris contends that when the government paid several confidential informants to gather information and later had those informants testify at Harris's criminal trial, the government violated the so-called "antigratuity statute," 18 U.S.C. S 201(c)(2). The statute prohibits "whoever" from giving "anything of value to any person, for or because of the testimony under oath .. . by such person as a witness upon a trial. . . ." We reject Harris's argument and will affirm the District Court.

I

The significance of the paid informants' testimony was to identify whether Harris, who admitted having once been a drug dealer, had withdrawn from his illegal activities by February 18, 1993, the first date the prosecution could use under the statute of limitations. Harris maintained that he had quit by then and that during the early nineties he became religious and devoted his time to preaching to youths and his former accomplices about the harmful effects of drugs.

The informant who placed Harris's participation in the drug dealing closest to the time of the indictment was Patrick Watts. A number of months before the trial the government gave Watts three payments of $250, $350, and $1,500 to collect information about drug deals. In addition to these payments, Watts, who had himself previously engaged in drug trafficking, also received a sentence reduction of approximately eight years. A second witness, Jerome Lewis, received $20 a number of months before the trial for acting as a confidential informant, and had his sentence reduced from approximately fifteen years to five years. His testimony, however, was less helpful, as it placed Harris's most recent drug activity around 1992 to 1993. A third witness for the government, Ron Baxter, had his car seized and later returned by state authorities in the course

2

of the state's prosecution of him, but there is no evidence in the record that the decision to return the car was influenced by federal officials. Harris also argues that the federal government never indicted Baxter, his girlfriend, or sister, all of whom apparently had some involvement with illegal drugs.

After hearing the witnesses' testimony, and having full knowledge of the money and other benefits those witnesses received, the jury convicted Harris of distributing cocaine in violation of 21 U.S.C. S 841(a)(1) and committing a related conspiracy offense in violation of 21 U.S.C. S 846.

II

We have previously held that promises of leniency do not violate the antigratuity statute. United States v. Hunte, 193 F.3d 173 (3d Cir. 1999), cert. denied, 120 S.Ct. 962 (2000). Thus, the sentence reductions that Watts and Lewis received are not prohibited by the statute. And by implication another type of leniency, the decision not to prosecute, which allegedly took place in Baxter's case, is also not prohibited by the statute. See, e.g. , United States v. Blassingame, 197 F.3d 271, 285 (7th Cir. 1999); United States v. Smith, 196 F.3d 1034, 1038 (9th Cir. 1999), cert. denied, 120 S.Ct. 1440 (2000). Cf. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653 (1972) (reviewing lengthy history of grants of immunity to witnesses). The central question raised in this appeal is whether the government violates the statute when it pays an informant before trial to collect information and does so when there is some expectation that the informant may later testify about what the informant discovered.

In United States v. Gonzales, 927 F.2d 139 (3d Cir. 1991), we held that there was no constitutional due process violation when a government informant testified at a criminal trial and was compensated for his participation in a sting operation by receiving a percentage of the assets forfeited by the defendant. Cf. Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408 (1966) (no due process violation for using testimony of an informer who received some compensation). Under the agreement at issue in Gonzales,

3

the amount of the informant's reward depended on the degree of his cooperation, but the defendants did not have to be convicted for the informant to be paid. 927 F.2d at 143. Nevertheless, we operated under the assumption that the informant "did have an interest in the result of " the case. Id. at 144. In finding no due process violation, we concluded that "[t]he method of payment is properly a matter for the jury to consider in weighing the credibility of the informant." Id. (quoting United States v. Hodge, 594 F.2d 1163, 1167 (7th Cir. 1979)).

Whether the government's use of a paid informant's testimony rises to the level of a constitutional violation, however, does not resolve whether legislation like the antigratuity statute prohibits the government from using the testimony. No such statutory issue was before the court in Gonzales. But regardless of the reach of Gonzales, under the facts of his case Harris is rowing against the tide. So far the three circuits that have directly addressed the issue have held, under a variety of circumstances, that the government's use of a paid informant's testimony does not violate the antigratuity statute. See United States v. Anty, 203 F.3d 305 (4th Cir. 2000); United States v. Barnett, 197 F.3d 138 (5th Cir. 1999); United States v. Albanese, 195 F.3d 389 (8th Cir. 1999).

We agree with these circuits that the government can pay informants to gather information and can have those informants testify at trial. In reaching this conclusion we stress, as the Fourth Circuit did, that "a defendant's right to be apprised of the government's compensation arrangement with the witness, see United States v. Bagley, 473 U.S. 667, 683-84, 105 S.Ct. 3375 (1985), and to inquire about it on cross-examination, cf. Davis v. Alaska, 415 U.S. 308, 315-17, 94 S.Ct. 1105 (1974), must be vigorously protected." United States v. Anty , 203 F.3d at 312. And of course perjury and the use of perjured testimony remain illegal. Barnett, 197 F.3d at 144.

Our reasoning follows the rationale in Hunte: a general term like "whoever," as it appears in the antigratuity statute, excludes the United States when a contrary reading "would deprive the sovereign of a recognized or established prerogative" or would "work obvious absurdity." Nardone v.

4

United States, 302 U.S. 379, 383-84, 58 S.Ct. 275 (1937). As the Fourth Circuit detailed, a broad array of statutes permit the government to pay witnesses for fees and expenses, including those incurred as part of the witness protection program. Anty, 203 F.3d at 309 (citing 28 U.S.C. S 1821 (per diem, mileage, and subsistence expenses for witnesses); Fed.R.Crim.P. 17(b) (same); 18 U.S.C.S 3195 (extradition costs); 18 U.S.C. S 3521(b) (expenses for witness protection program); 28 U.S.C. S 1821(b) (nominal witness attendance fee); Fed.R.Crim.P. 17(d) (same)). And the antigratuity statute itself allows the government to pay "witness fees provided by law." See 18 U.S.C. S 201(d).

Harris could argue that since these statutes are limited to expenses a witness incurs in testifying on the government's behalf, they appear to offer insufficient support for any greater compensation for gathering evidence and testifying. But other statutes address more directly the circumstance raised in our case--payments to others for gathering information. As Anty explains, Congress has authorized payments for "information" and "services" to apprehend those who violate a number of criminal laws. See, e.g., 21 U.S.C. S 886(a) (payments to individuals for drug enforcement); 26 U.S.C. S 7623 (payments to detect and prosecute tax offenders); 19 U.S.C. S 1619 (payments for information in customs enforcement); 18 U.S.C. S 3059B (rewards for assisting the Department of Justice); 18 U.S.C. S 3059A(a)(1) (payments for information in prosecution of offenses against financial institutions); 18 U.S.C. S 3059(b) (rewards for information in apprehending certain fugitives); 18 U.S.C. S 1751(g) (payments for "information and services" about assassination, assault, or kidnapping of the President); 18 U.S.C. S 3056(c)(1)(D) (payments for assisting the Secret Service). As Anty reasoned, we think that Congress contemplated that the individuals paid under these statutes could assist both by gathering information and testifying about it. "In authorizing the payment of rewards for information, assistance, and services in the enforcement of criminal statutes, Congress surely must have contemplated payments to informants for assisting both in investigations and by testifying." 203 F.3d at 309. Adopting the rule urged by Harris also would seem to have the surprising

5

implication that police officers may not testify at trials, as the government pays the officers a salary to collect information and testify at trial about that information when necessary.

This case does not require us to decide, however, whether the antigratuity statute allows the government to pay a witness solely or essentially for favorable testimony, as distinct from paying a witness for collecting evidence and testifying about what was found. In this regard we follow the Seventh Circuit, which has expressly reserved whether the antigratuity statute "would permit prosecutors to pay cash for favorable testimony, a practice that lacks the statutory and historical support of immunity and sentence reduction." United States v. Condon, 170 F.3d 687, 689 (7th Cir.), cert. denied, 119 S.Ct. 1784 (1999). Existing rules of evidence may also speak to this circumstance.

The government insists that we have effectively decided that it can make payments solely for favorable testimony because in Hunte we defined the term "whoever" in the antigratuity statute as not including the government. We disagree with the government that Hunte resolves the issue. In Hunte we merely held that "whoever" does not encompass the government when it is acting within some well-established authority--in that case the government's power to use leniency or plea agreements in exchange for truthful testimony. Our reasoning in this case parallels that logic.

We find no merit in the other arguments Harris raises. For the foregoing reasons, the December 21, 1998 judgment of the District Court will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

6