**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

v.

MICHAEL Y. DAVIS, a/k/a Jamaican
Mike, a/k/a Numba,
                    *Defendant-Appellant.*

No. 01-4889

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-01-120-A)

Argued: February 28, 2003

Decided: April 14, 2003

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Matthew Alan Wartel, BYNUM & JENKINS, P.L.L.C.,
Alexandria, Virginia, for Appellant. Richard Daniel Cooke, Special
Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON
BRIEF:** Paul J. McNulty, United States Attorney, Rebeca Hidalgo
Bellows, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Michael Y. Davis, Jr., who stands convicted of conspiracy to distribute controlled substances, in violation of 21 U.S.C.A. § 846 (West 1999), appeals raising numerous issues. We affirm.

### I.

A federal grand jury indicted Davis, Steve Anthony Marsh, Horace Perry, and James Lewis Blanco of engaging in a conspiracy to possess with intent to distribute and to distribute fifty grams or more of crack cocaine, five kilograms or more of cocaine, and one hundred kilograms or more of marijuana, in violation of 21 U.S.C. § 846. A forfeiture count, and an additional count against Marsh, were also included. A jury found Davis and the co-conspirator tried with him, Blanco, guilty. The court sentenced Davis to 240 months in prison, five years of supervised release, and a $100 special assessment. The court also entered a criminal forfeiture order against Davis' 1999 gold Cadillac Escalade and $500,000 in drug proceeds. *See United States v. Davis*, 177 F. Supp. 2d 470, 477 (E.D. Va. 2001) (citing Forfeiture Order). Both defendants noted appeals. On September 23, 2002, we affirmed Blanco's conviction. *See United States v. Blanco*, No. 01-4814, 2002 WL 31104265 (4th Cir. Sept. 23, 2002). We now consider Davis' appeal.

### II.

Davis challenges his conspiracy conviction on several grounds.[1]

---

[1]We have expressly rejected two of Davis' arguments in prior cases. The first is the contention that the district court erred in refusing to strike the testimony of the government's cooperating witnesses because these witnesses testified in "expectation of a reward" in violation of 18

A.

Initially Davis contends that for several reasons the district court erred in refusing to grant a mistrial because of the prosecutor's assertedly improper closing rebuttal argument. During that argument, the prosecutor said:

> . . . how much things have changed since opening. What was it that Mr. Wartel told you in his opening statement? Mr. Wartel told you in his *opening statement that the evidence would show that Michael Davis was not guilty. Do you remember when he said that to you? You are allowed to scrutinize claims that the defense makes the same way that you scrutinize claims the government makes.* And there was no evidence that supported Mr. Wartel when he made that claim. What was the evidence supposed to be through the one guy that he called that was his employer, that talked about the per diem?

(Emphasis added). The prosecutor concluded as follows:

> In closing, ladies and gentlemen of the jury, one other thing that prosecutors are allowed to do in closing is to make a plea for law enforcement. Don't you find, you know, the analogy as to buying eggs or these other things that are mentioned — these weren't eggs that were being dealt with in our community. Kimeth Gardner did not blow through $45,000 worth of eggs and throw his life down the tubes. . . . These drugs are real. The impact that they have is real.

U.S.C.A. § 201(c)(2) (West 2000). We rejected this contention in *United States v. Anty*, 203 F.3d 305 (4th Cir. 2000). The second is the argument that the statutory penalty provision in 21 U.S.C.A. § 841 (West 1999 & Supp. 2003) violates the Constitution. We rejected this argument in *United States v. McAllister*, 272 F.3d 228, 232 (4th Cir. 2001). Absent a change in controlling Supreme Court precedent, and there is none here, a panel of this court must abide by circuit precedent. *See United States v. Prince-Oyibo*, 320 F.3d 494, 498 (4th Cir. 2003). Accordingly, we must reject these arguments in the case at hand.

. . . It's your community. Do what you think is right. And I ask you to convict both of these defendants for the offense charged.

Following closing arguments, Davis moved for a mistrial, which the district court denied.

"The test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) the prosecutor's remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988), *overruled on other grounds by Bailey v. United States*, 516 U.S. 137 (1995) (internal quotation marks omitted). Comments made by a prosecutor warrant a new trial only when they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Francisco*, 35 F.3d 116, 130 (4th Cir. 1994) (internal quotation marks omitted).

Davis first maintains that the above statements improperly shifted the burden of proof to the defense. The argument is without merit. A prosecutor may ask a jury to look for weaknesses in a defendant's case; moreover, any misimpression caused by these remarks would have been cured by the court's specific instructions, that "[t]he burden is always on the prosecution to prove guilt beyond a reasonable doubt."

Second, Davis contends the prosecutor improperly referred to his failure to testify. He argues that these statements have "the effect of calling to the attention of the jury the fact that no other evidence was presented to explain things that only Defendant could have been expected to explain." Brief of Appellant at 23. A prosecutor can characterize the evidence as "uncontradicted," even if the defendant was the only person who could have refuted such evidence. *United States v. Francis*, 82 F.3d 77, 79 (4th Cir. 1996).

In this case, defense counsel in his opening statement stated that there "was a lack of any real evidence as to [the guilt] of Michael Davis" and that "Michael Davis is not guilty," and "[b]ecause we doubt the quality of the evidence as to Michael Davis, we may not

present much evidence, if any." The prosecutor could reasonably argue that defense counsel failed to prove what he had promised in opening argument: that the evidence, or lack thereof, would show Davis "not guilty."

Finally, Davis argues that the prosecutor made an improper plea for law enforcement; that claim, too, is meritless. The law prohibits a prosecutor from urging that a jury convict a defendant not because of his participation in a crime, but merely to make a general statement against such crimes. *United States v. Pupo*, 841 F.2d 1235, 1240 (4th Cir. 1988). In this case, although the prosecutor stated that he was allowed to make a plea for law enforcement and that "[i]t's your community. Do what you think is right," he did not overstep this boundary, given that he focused his comments on the overwhelming and largely uncontroverted evidence of Davis' guilt.

## B.

Davis also maintains that the district court erred in excluding certain expert testimony. We review the exclusion of expert testimony for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997).

Specifically, Davis maintains that the court erred in excluding the testimony of (1) an experienced criminal defense attorney who would have testified that granting sentence reductions for cooperating witnesses affected their truthfulness;[2] and (2) a retired law enforcement

---

[2]Davis raises a related argument challenging the district court's refusal to give a proposed jury instruction "addressing the usage of U.S.S.G. 5K1.1 and Fed. R. Crim. P. 35(b) motions." A denial of a requested jury instruction "constitutes reversible error only if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995) (internal quotation marks omitted). Here, even assuming that the requested instructions was both correct and crucial to the case, it is clear that it was "substantively covered by the court's charge to the jury." The court instructed the jurors that they were the "sole judges" of credi-

officer to testify about investigative techniques in drug cases. We must reject his argument because, in both instances, the district court acted well within its discretion. *See United States v. French*, 12 F.3d 114, 117 (8th Cir. 1993).

III.

Davis also challenges the district court's enhancements of his sentence.[3] We review for clear error. *See United States v. Rusher*, 966 F.2d 868, 860 (4th Cir. 1992).

Davis claims that the district court's enhancement of his sentence pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm constituted clear error. He maintains that this enhancement was based on the testimony of one highly unreliable witness and the vague reports of cooperating witnesses who claim to have seen guns at Davis' home

---

bility and that alleged accomplice testimony "must be examined and weighed by the jury with greater care than the testimony of a witness who did not participate in the commission of [the] crime." The court also cautioned the jury to "determine whether the testimony of the accomplice has been affected by self-interest, or by an agreement he may have with the government, or by his own interest in the outcome of the case, or by prejudice against the defendant." The court continued by explaining about informer testimony, instructing the jury to scrutinize it closely and view it with suspicion.

[3]Initially, Davis contends that pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), each factor that increases the sentencing guideline range must be charged in the indictment, submitted to the jury, and proven by the Government beyond a reasonable doubt. Both the Supreme Court and this court have previously rejected this argument. *See Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406, 2420 (2002) (plurality) (holding that facts establishing an increased mandatory minimum sentence "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt"); *United States v. Lewis*, 235 F.3d 215, 219 (4th Cir. 2000), *cert. denied*, 534 U.S. 814 (2001) (holding that *Apprendi* violations are "limited to facts that increase punishment beyond the prescribed statutory maximum" and that due process is not violated unless the "sentence resulted in a penalty greater than the statutory maximum").

on various occasions. "[P]roximity of narcotics to weapons is sufficient to warrant a Section 2D1.1(b)(1) enhancement." *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997). Moreover, the enhancement does not "require[ ] proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun." *Id.* (internal quotation marks omitted). A defendant bears the burden of showing that it is "'clearly improbable that the weapon was connected with the offense.'" *Id.* at 852-53 (quoting the Application Notes to Section 2D1.1). The district court correctly noted that there was a "chorus of testimony" about Davis' possession of firearms generally, and specifically having them in his place of residence, where he also dealt drugs.[4] Because the enhancement does not require proof of specifically concurrent acts, and the burden was on Davis to show that it was "clearly improbable" that the weapon was connected with his drug offenses, the district court did not clearly err in enhancing Davis' sentence on this basis.

In addition to challenging the gun enhancement, Davis also argues that the trial court lacked sufficient evidence to enhance his sentence for drug amounts beyond those found by the jury. Noting that the Government never seized any drugs from him, or produced any tangible evidence of his drug trafficking, Davis again argues that the Government's evidence was based on the unreliable testimony of cooperating witnesses, and, therefore, was insufficient to support the enhancements. During the trial, at least three witnesses testified that Davis sold them cocaine, which they then converted into crack.[5] Spe-

---

[4]The court relied on the testimony of: (1) Horace Perry that he observed Davis in possession of a nine millimeter handgun and a .38 caliber revolver; (2) Mack Francis that he observed Davis in possession of a Tech-9, a Mac-10, and a nine-millimeter handgun; (3) Jason McCree that he observed Davis in possession of firearms, including a Glock, a Mac-10, a Tech-9, and an AK-47 and that Davis regularly stored these guns throughout his house and in his car; and (4) Steve Marsh that Davis showed him a Mac-11 and an AK-47 at Davis' house, that he saw the butt of a nine millimeter handgun in Davis' car, and that Davis carried these guns for protection because he was a drug dealer. In addition, Warren Jenkins also testified that Davis kept a gun in his bedroom and showed it to him on one occasion.

[5]*See* J.A. 258, 261-62 (Steve Marsh); J.A. 338-39 (Horace Perry); J.A. 665 (Warren Jenkins).

cifically referring to the testimony of Steve Marsh, the district court noted that although it was not persuaded by all that Marsh said, it was clear that Davis knew some of the cocaine he was selling would be converted to crack. In view of all this testimony, making allowances for embellishments and fading memories, the court held that the preponderance of the evidence showed that it was proper to attribute at least 500 grams, but less than 1.5 kilograms, of crack to Davis. The court acted within its "broad discretion" in finding these amounts.

IV.

Finally, Davis argues that the district court erred in ordering forfeiture of his property without submitting the issue to the jury. Specifically, he contends that the general request for a jury trial made by his counsel at arraignment — "On behalf of Mr. Davis, I . . . respectfully request a jury trial" — was sufficient to trigger the requirement under Fed. R. Crim. P. 32.2(b)(4) that the forfeiture issue be submitted to the jury after it returned a guilty verdict against Davis. The district court rejected this argument, noting that it "flatly contradicts the language and purpose of the new criminal forfeiture rule." *Davis*, 177 F. Supp.2d at 482. We agree.

Fed. R. Crim. P. 32.2(b)(4) provides that:

> Upon a party's request in a case in which the jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense committed by the defendant.

This provision, along with the remainder of Rule 32.2, is the product of the December 1, 2000 amendments to the procedural rules governing criminal forfeiture. The previous provision governing this matter, Rule 31(e), now abrogated, required that all criminal forfeiture matters be submitted to a jury in the form of a special verdict unless expressly waived by the defendant. The new rule simply inverts the default principle that animated the old rule. Now, unless a party expressly requests a jury determination on the forfeiture matter, the court will make the determination. *See* Fed. R. Crim. P. 32.2 advisory committee's notes.

The Supreme Court's decision in *Libretti v. United States*, 516 U.S. 29 (1995), prompted this rather significant change. In *Libretti*, the Court held that criminal forfeiture constitutes an aspect of the sentence imposed (rather than being akin to a separate criminal offense) and, consequently, that there is no constitutional right to a jury trial in criminal forfeiture proceedings. *Id.* at 38-41.

Thus, the new rule makes a formerly mandatory requirement optional upon the express request of a party. As the Advisory Committee pointed out, "[t]he provision gives the defendant, in all cases where a jury has returned a guilty verdict, the option of asking that the jury be retained to hear additional evidence regarding the forfeitability of the property." Fed. R. Crim. P. 32.2 advisory committee's notes. Instead of an automatic entitlement to a jury determination of forfeiture issues, criminal defendants now have an affirmative obligation to exercise their option to receive such a determination.

Davis maintains that he properly exercised his option to have the jury determine the forfeiture issue when he made his general request for a jury trial at arraignment. As the district court pointed out, however, "all criminal cases that proceed to a jury trial are the result of such a general election, made either at arraignment or at some other appropriate time in the course of the proceedings." *Davis*, 177 F. Supp. 2d at 482. Thus, if we accept Davis' argument, then "all jury cases resulting in convictions would automatically require a jury determination of forfeiture, precisely the result Congress sought to avoid in enacting Rule 32.2(b)." *Id.*

Accordingly, we hold that Davis' general request for a jury trial at his arraignment did not suffice to trigger the requirement that the criminal forfeiture issue be decided by the jury. In doing so, we leave for another day the more difficult question of what, at a minimum, would constitute a sufficient request and when, in the course of the proceedings, such a request would have to be made.

V.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.