**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MYKOLA IHNATENKO,
            *Defendant-Appellant.*

No. 05-50150

D.C. No.
CR-01-01652-JM

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MYKHAILO YURCHENKO,
            *Defendant-Appellant.*

No. 05-50197

D.C. No.
CR-01-01652-JM

OPINION

Appeals from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Submitted* March 30, 2007

Filed March 30, 2007

Before: A. Wallace Tashima, Raymond C. Fisher, and
Richard C. Tallman, Circuit Judges.

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**COUNSEL**

Gerald Singleton, San Diego, California; Mary F. Prevost, San Diego, California, for the appellants.

Mark R. Rehe, Assistant United States Attorney, San Diego, California, for the appellee.

**OPINION**

TALLMAN, Circuit Judge:

Mykola Ihnatenko and Mykhailo Yurchenko appeal their convictions for conspiracy to possess cocaine aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. app. § 1903(a) and (j) and possession of cocaine with intent to distribute aboard a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. app. § 1903(a), (c)(1)(C), and (f). Ihnatenko, the vessel engineer in charge of fuel systems and refrigeration, and Yurchenko, the third mate machinist aboard the smuggling vessel, were co-defendants tried separately from the defendants whose convictions we upheld in *United States v. Zakharov*, 468 F.3d 1171 (9th Cir. 2006), and *United States v. Savchenko*, No. 04-

50045, 2006 WL 3825385 (9th Cir. Dec. 26, 2006) (unpublished disposition). We have jurisdiction to review appellants' convictions pursuant to 28 U.S.C. § 1291, and we affirm.

I

Our opinion in *Zakharov* recounts the facts in this case, beginning with the April 2001 seizure in international waters off the coast of Mexico of over ten tons of cocaine aboard the *F/V Svesda Maru*, a fishing vessel registered in Belize. *See* 468 F.3d at 1174-75. We will not reiterate them here.

Ihnatenko and Yurchenko were tried with six co-defendants before the Honorable Jeffrey T. Miller of the United States District Court for the Southern District of California. On March 24, 2004, after a twenty-four-day jury trial, appellants were found guilty on both counts.[1]

II

Appellants contend that the government violated 18 U.S.C. § 201(c)(2)[2] in providing compensation in exchange for the

---

[1]The jury hung with respect to the counts against the remaining six defendants, and the district court declared a mistrial. In July 2004, the government retried its case against five of the six defendants. All five defendants were subsequently acquitted.

[2]The federal anti-gratuity statute provides that whoever

directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, . . . authorized by the laws of the United States to hear evidence or take testimony, . . . shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2).

cooperation of a witness, Rene Franco-Zapata ("Franco"). The district court rejected this argument. We affirm.[3]

Franco received three types of benefits in exchange for his agreement to testify on behalf of the government. These benefits include: (1) cash payments to housing providers and to him and his family in excess of $200,000 over a fifteen-month period; (2) promises not to prosecute him or his daughter for any drug crimes; and (3) provision of resident alien cards allowing Franco and his family to live and work in this country. We have previously held that § 201(c)(2) does not prohibit the government from providing immigration benefits or immunity from prosecution to a cooperating witness. *See United States v. Feng*, 277 F.3d 1151, 1154 (9th Cir. 2002) (immigration benefits); *United States v. Smith*, 196 F.3d 1034, 1038-40 (9th Cir. 1999) (immunity); *see also United States v. Mattarolo*, 209 F.3d 1153, 1160 (9th Cir. 2000) (leniency).

[1] Thus, the only issue we must decide is whether the government's provision of cash benefits or government-paid housing to a cooperating witness violates § 201(c)(2) and warrants a new trial. Appellants face a high hurdle in pressing an argument that has been rejected by every other circuit to have considered it. *See United States v. Mojica-Baez*, 229 F.3d 292, 301-02 (1st Cir. 2000); *United States v. Febus*, 218 F.3d 784, 796 (7th Cir. 2000); *United States v. Harris*, 210 F.3d 165, 167 (3d Cir. 2000); *United States v. Anty*, 203 F.3d 305, 311 (4th Cir. 2000); *United States v. Barnett*, 197 F.3d 138, 144-45 (5th Cir. 1999); *United States v. Albanese*, 195 F.3d 389, 394-95 (8th Cir. 1999); *United States v. Harris*, 193 F.3d 957, 958 (8th Cir. 1999).

[2] Paid informants play a vital role in the government's infiltration and prosecution of major organized crime and drug syndicates like this one. We have recognized that

---

[3]We affirm the district court's ruling on other issues in a memorandum disposition filed separately.

our criminal justice system could not adequately function without information provided by informants and without their sworn testimony in certain cases. . . . [I]t is a well-known phenomen[on] that the higher-ups in criminal enterprises attempt to insulate themselves from detection and exposure by having their unlawful schemes carried out by others. Without informants, law enforcement authorities would be unable to penetrate and destroy organized crime syndicates, drug trafficking cartels, bank frauds, telephone solicitation scams, public corruption, terrorist gangs, money launderers, espionage rings, and the likes. In the words of Judge Learned Hand, "Courts have countenanced the use of informers from time immemorial; in cases of conspiracy, or in other cases when the crime consists of preparing for another crime, it is usually necessary to rely upon them or upon accomplices because the criminals will almost certainly proceed covertly."

*United States v. Bernal-Obeso*, 989 F.2d 331, 334-35 (9th Cir. 1993) (quoting *United States v. Dennis*, 183 F.2d 201, 224 (2d Cir. 1950)); *see also On Lee v. United States*, 343 U.S. 747, 756 (1952) ("Certainly no one would foreclose the turning of state's evidence by denizens of the underworld."). Recognizing the important contribution of cooperating witnesses and informants in our criminal justice system—and the substantial danger that such persons face from retaliation—Congress authorized in the Witness Security Reform Act multiple forms of government assistance, including relocation, housing, and payment to meet basic living expenses. *See* 18 U.S.C. § 3521(b)(1). Such compensation is necessary to assure the safety of those who turn against their former compatriots in the underworld.

**[3]** We today join our sister circuits and hold that 18 U.S.C. § 201(c)(2) does not prohibit the government from paying fees, housing, expenses, and cash rewards to any cooperating

witness, so long as the payment does not recompense any corruption of the truth of testimony. *See Smith*, 196 F.3d at 1039 n.5 (noting that "18 U.S.C. § 201(c)(2) might apply to a wayward prosecutor who bribes a witness to lie on the stand"). In reaching this conclusion we stress, as did the Third and Fourth Circuits, that " 'a defendant's right to be apprised of the government's compensation arrangement with the witness, and to inquire about it on cross-examination, must be vigorously protected.' " *Harris*, 210 F.3d at 167 (quoting *Anty*, 203 F.3d at 312 (internal citations omitted)). The district court did so here, and Franco was exhaustively cross-examined on these benefits by eight defense lawyers in their efforts to discredit him.

**[4]** In addition, we note that, even if appellants had proven a violation of § 201(c)(2), they would not be entitled to a new trial under that statute. *Smith*, 196 F.3d at 1040 (recognizing that the only remedy authorized by § 201(c)(2) is criminal prosecution of the prosecutor, leading to imprisonment or fine). It is not a rule of exclusion that may be invoked by defendants to thwart their criminal prosecutions. *Id.*

**AFFIRMED.**