729 So.2d 990 (1999)
Michael T. GARNER, Appellant,
v.
STATE of Florida, Appellee.
No. 98-81.
District Court of Appeal of Florida, Fifth District.
March 26, 1999.
*991 James B. Gibson, Public Defender, and Dee Ball, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Kellie A. Nielan, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, J.
Garner appeals his conviction and sentence for manslaughter. His sentencing score was 222.6, which placed him in a sentencing range of 145.9 to 243 months in prison. The trial court departed from the guidelines and sentenced Garner to 30 years in prison. Garner argues on appeal that the reasons given by the trial court for the departure sentence are legally insufficient and are not supported by the record. He also argues a statement he gave to William DeFilippo, a child protection investigator with the Department of Children and Families, should have been excluded or suppressed because DeFilippo did not advise him of his right to an attorney or of the ways information given by him could be used. We affirm.
The trial judge provided the following written reasons for imposing a departure sentence:
1) The victim was 9 months pregnant and past her due date and because of that was in an unusually vulnerable position because of her physical condition of the late term pregnancy.
2) The offense involves a particularly aggravating set of circumstances.
Section 921.001(6) provides that although a court may impose a departure sentence, departures are discouraged. See also, Wemett v. State, 567 So.2d 882 (Fla.1990), superceded by stat., Capers v. State, 670 So.2d 967 (Fla. 1st DCA 1995). The level of proof to establish facts supporting a departure sentence is the preponderance of the evidence. Green v. State, 662 So.2d 748 (Fla. 4th DCA 1995). Further, where more than one reason is cited for departure, it can be upheld if at least one of the reasons is valid. § 921.001(6), Fla. Stat.
Departure is permitted if the offense is one of violence and it is committed in a manner *992 that was especially heinous, atrocious or cruel, or if the victim is especially vulnerable. § 921.0016(3)(b) and (j), Fla. Stat. Pregnancy has been upheld as a valid basis to conclude a victim was especially vulnerable and thus provides a proper basis to impose a departure sentence. See Berry v. State, 511 So.2d 1075 (Fla. 1st DCA 1987).[1] In this case, the evidence established that the victim was in an advanced state of pregnancy (actually past her due date). She was carrying an additional 39 to 46 pounds, and it was difficult for her to move about. Her physical condition made it difficult, if not impossible for her to defend herself, or duck or run from Garner, as he assaulted her with a gun. Although being pregnant may not make all victims especially vulnerable, the victim in this case clearly was.
In addition, the trial court found the circumstances of the killing particularly aggravating. The evidence did not support a finding that the offense was consciousless or pitiless and tortuous to the victim, since Garner shot the victim one time in the back of her head, causing her immediate death. However, it was also clear that his actions caused a fully viable unborn child to die in his mother's womb. Garner made no effort to summon help for this child. Instead, he buried the victim and her unborn child in his yard and poured a fresh slab of concrete over the grave to conceal his actions. The jury found Garner guilty in the death of the fetus, but the court granted a judgment of acquittal on this count. Thus he was not sentenced for or otherwise held accountable for this death. Therefore it may properly be considered as the basis for a departure sentence. See Shaw v. State, 510 So.2d 1112 (Fla. 4th DCA 1987); Parker v. State, 478 So.2d 823 (Fla. 2d DCA 1985).
With regard to the suppression issue, the evidence established that at the time Garner made statements to DeFilippo, admitting his guilt in shooting the victim, he was incarcerated in the Seminole County Jail. DeFilippo, as a state employee (a child protection investigator with the Department of Children and Family Services) visited Garner in jail to question him about his plans for his young son, since the child's mother was dead,[2] and he was in jail. During the interview, Garner said:
I'm just going to do my time, get out of here and then I'm going to take care of Tyler. I know what I did was wrong. I made a big mistake ... I killed my ex-wife.
The trial court found that DeFilippo was not a law enforcement officer and he was not working as an agent for law enforcement, at the time of the interview. He had not talked to the police prior to the interview, and he had not been asked by them to see Garner and elicit any information regarding the crime. The trial court further found that the information was volunteered by Garner to DeFilippo and it was not given in response to questioning. In fact, DeFilippo told Garner he did not want to get into the criminal side of the situation. The trial court's finding comes to the appellate court with a presumption of correctness. McNamara v. State, 357 So.2d 410 (Fla.1978).
We agree that the exclusionary rule based on constitutional considerations, was not impacted in this case. McCubbin v. State, 675 P.2d 461 (Okla.Crim.App.1984); Hayes v. State, 667 N.E.2d 222 (Ind.App. 1996); Commonwealth v. Cooper, 899 S.W.2d 75 (Ky.1995).[3] However, Garner argues that *993 section 415.504(4)(c)3,[4] required DeFilippo to advise him of his right to an attorney and warn him his statements could be used against him in proceedings brought by the Department to protect abused children. However, at the time the statements were made there were no such proceedings in place. DeFilippo was merely doing his job by asking what Garner's plans were for his son, as no parent was available to care for him.
Further, even if the civil statute were applicable to this case, no Florida case has held it is the equivalent of the exclusionary rule in child abuse/neglect cases,[5] or that its violation triggers the application of the rule in unrelated criminal proceedings.
AFFIRMED.
DAUKSCH and GOSHORN, JJ., concur.
NOTES
[1] The Legislature has also recognized pregnancy as a special condition when it amended section 784.045 to make battery aggravated when the victim was pregnant at the time of the offense, and the offender knew or should have known the victim was pregnant.
[2] Garner's former wife was the murder victim.
[3] The exclusionary rule is not applicable to illegal searches by private citizens. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). A private citizen's actions triggers constitutional protection only if the citizen is acting as an agent of the government. U.S. v. Kinney, 953 F.2d 863, 865 (4th Cir.1992). In determining whether a private citizen has acted as an agent of the government, the court must consider: (1) whether the government knew of and acquiesced in the activity; and (2) whether the citizen was motivated on the basis of assisting the government. U.S. v. Feffer, 831 F.2d 734, 739 (7th Cir.1987). If both factors are present, a private party will be considered to have acted as a government agent. Id. That is, the question is whether, under all the circumstances, a person has acted as an instrument of the state. U.S. v. Hall, 142 F.3d 988 (7th Cir.1998).
[4] Renumbered as 39.201 and amended by Laws 1998, c. 98-403, § 31, effective 10-1-98. That section is entitled: Mandatory reports of child abuse or neglect; mandatory reports of death; central abuse hotline, and provides in part:

Upon commencing an investigation under this part, the child protective investigator shall inform any subject of the investigation of the following:
* * *
3. The right to obtain his or her own attorney and ways that the information provided by the subject may be used. (emphasis added).
That is, this section is applicable in investigations of child abuse; a situation not present here.
[5] See Matter of Cassandra, 132 Misc.2d 546, 504 N.Y.S.2d 602 (N.Y.Fam.Ct.1986) (holding that the protection of children alleged to be abused required that the exclusionary rule not be applied in a child abuse case).