**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

WILLIE JAMES RICHARDSON, a/k/a Riz,
a/k/a Raheem,
Defendant-Appellant.

No. 98-4139

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-97-121)

Argued: May 7, 1999

Decided: September 3, 1999

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkinson and Judge Moon joined.

_____

**COUNSEL**

**ARGUED:** Martin Gregory Bahl, FEDERAL PUBLIC DEFEND-
ER'S OFFICE, Baltimore, Maryland, for Appellant. Laura Marie
Everhart, Assistant United States Attorney, Norfolk, Virginia, for
Appellee. **ON BRIEF:** James Wyda, Acting Federal Public Defender,

Beth M. Farber, Acting Federal Public Defender, Baltimore, Maryland, for Appellee. Helen F. Fahey, United States Attorney, Norfolk, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

Willie Richardson challenges his convictions for conspiring to distribute cocaine and for possession of cocaine with the intent to distribute, contending that the government's testimony against him was improperly obtained from coconspirators by offering them leniency, immunity, and promises not to prosecute other crimes, in violation of 18 U.S.C. § 201(c)(2) (prohibiting a person from offering "anything of value" in exchange for testimony), and that the testimony so obtained therefore should have been excluded. Because we conclude that § 201(c)(2) does not apply to the government when acting in accordance with its statutory authority and because we reject Richardson's other assignments of error, we affirm.

I

In November 1997, Richardson was tried on one count of conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base and eight counts of possession with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. The government's case against Richardson consisted primarily of testimony from individuals who had participated in the cocaine distribution business with Richardson and who had entered into plea agreements with the government to give testimony.

Alonda Ervin testified that Richardson had hired her to transport cocaine between New York and Virginia Beach, paying her $1,000 per trip. After she was arrested by the police with approximately 12 "bricks" of cocaine, she entered into a plea agreement which required her, in her words, "to cooperate fully with the government on all bases." She testified that she was hoping to have her sentence further reduced, at least in part as a reward for giving testimony in Richardson's trial.

2

Michael McClean testified that, at the instruction of Richardson, he and Ervin transported approximately four to five kilograms of cocaine to South Carolina. McClean testified pursuant to a plea agreement that required him to give testimony in Richardson's trial. He stated that he negotiated a plea agreement in order to obtain a lesser prison sentence and that he understood that the prosecutor could arrange for a further reduction in his sentence after Richardson's trial.

Erica Lee testified that, while she had no knowledge of any drug activity, she had assisted Richardson in renting cars on multiple occasions and that she had later assisted him in buying a car which was put in her name. Lee signed an agreement with prosecutors providing that in exchange for her testimony, she would not be prosecuted for any past criminal violations.

Anthony Boddie testified that he was in the narcotics business with Richardson and that he made trips to pick up and deliver cocaine and money for Richardson. Boddie testified pursuant to a plea agreement on the understanding that he would "get substantial assistance."

Jonathan Cousar testified that he sold cocaine in Norfolk and that he frequently obtained his crack cocaine from Richardson. Cousar testified pursuant to a plea agreement which, in his words, required him "to testify against whoever didn't plead guilty," including Richardson. He received immunity for his testimony, and he believed that the United States Attorney would make a motion to reduce his sentence further after the Richardson trial.

Cynthia Pemberton testified, pursuant to a plea agreement, to drug activity with Cousar and others. At the time she testified, she had not yet been sentenced and understood that she was testifying in exchange for a potential reduction in her sentence.

At the close of the government's case, the court dismissed two possession-with-intent-to-distribute counts and the jury convicted Richardson on all remaining counts. The court attributed over 137 kilograms of cocaine and over 4 kilograms of crack cocaine to Richardson and sentenced him to life imprisonment.

This appeal followed.

3

II

For his principal argument on appeal, Richardson contends that the government's testimony against him was obtained from co-conspirators in exchange for the government's promises to seek or to consider seeking more lenient sentences, for immunity, or for the promise not to prosecute them for other crimes, in violation of 18 U.S.C. § 201(c)(2). He argues that without testimony so obtained, he would not have been convicted. Section 201(c)(2) provides:

> Whoever . . . directly or indirectly, gives, offers or prom-ises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other pro-ceeding, before any court . . . authorized by the laws of the United States to hear evidence or take testimony . .. shall be fined under this title or imprisoned for not more than two years, or both.

Richardson argues that when prosecutors offered witnesses leniency, immunity, and promises not to prosecute in return for testimony against him, the prosecutors offered something of value "for or because of" sworn testimony before a federal court. Accordingly, he contends, the evidence should have been excluded. The question this argument raises is whether the term "whoever," as used in the statute, includes the United States government when it acts through its agents pursuant to statutory authorization.

Richardson's counsel ably argued that the word "whoever" in the statute is not qualified to exclude the government and that therefore the Supreme Court's decision in Nardone v. United States, 302 U.S. 379 (1937), which held that "person" when used without qualification in a particular statute included the government, should govern this case. In Nardone, the Supreme Court interpreted § 605 of the Federal Communications Act of 1934, which prohibits any"person" from intercepting and divulging any communication, and concluded that the term "person" applied to the United States acting through its law enforcement agents. The Court reasoned that Congress, in enacting § 605, had chosen to restrict federal agents as a matter of policy: "Congress may have thought it less important that some offenders

4

should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty." Nardone, 302 U.S. at 383. The Court noted, however, that while the Congressional policy evident in§ 605 of the Federal Communications Act required that the general term "person" include the government acting through its agents, such general terms would be interpreted as excluding the government where the statute, "if not so limited, would deprive the sovereign of a recognized or established prerogative title or interest," id. (footnote omitted), or where including the government "would work obvious absurdity," id. at 384. Our task in this case, therefore, is to decide whether interpreting the general term "whoever" in § 201(c)(2) to include the United States would effectuate a Congressional policy as in Nardone, or whether it would instead deprive the government of a recognized prerogative or work an absurdity.

Congress has enacted a number of statutes authorizing and encouraging the United States, in its capacity as prosecutor, to offer leniency and immunity in return for testimony. For example, 18 U.S.C. § 3553(e) provides, "Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." (Emphasis added). Consistent with this provision, Congress has instructed the United States Sentencing Commission to "assure that the [sentencing] guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C.§ 994(n) (emphasis added); see also Fed. R. Crim. P. 35(b). Substantial assistance in the "prosecution" of another person -- as distinguished from the "investigation" of another person -- includes the giving of testimony. While assistance in prosecution could conceptually include other services, the principal service that Congress expected a felon (i.e. one who is looking for a reduction in his own sentence) to render is the provision of truthful testimony. It is apparent that 18 U.S.C.§ 3553(e) and 28 U.S.C. § 994(n) contemplate the government's granting of leniency to persons found guilty of crimes in exchange for testimony against oth-

5

ers, and these statutes express Congress' intent to authorize such exchanges to promote law enforcement and justice. Moreover, these prosecutorial mechanisms are often coupled with plea agreements, which have long been accepted as proper tools of law enforcement. See, e.g., Fed. R. Crim. P. 11(e) (providing plea agreement procedures); 28 U.S.C. § 994(a)(2)(E) (directing the Sentencing Commission to promulgate policy statements for accepting and rejecting plea agreements); U.S.S.G. § 6B1 (regulating plea agreements).

Congress has also enacted 18 U.S.C. §§ 6002-6003, which allow prosecutors to seek immunity for witnesses in order to obtain testimony in a judicial proceeding. Immunity statutes such as these "have historical roots deep in Anglo-American jurisprudence," dating back at least to 1710 England and have long existed in every American jurisdiction. Kastigar v. United States, 406 U.S. 441, 445-47 & n.13 (1972). "The existence of these statutes reflects the importance of testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime." Id. at 446. These immunity statutes are "essential to the effective enforcement of various criminal statutes." Id. at 447.

It is thus clear that Congress has followed a long-standing and consistent policy of authorizing and encouraging grants of leniency and immunity, in conjunction with plea agreements, in exchange for truthful testimony. It is against this backdrop that we must interpret the term "whoever" in 18 U.S.C. § 201(c)(2).

The juxtaposition of § 201(c)(2) with these other law enforcement statutes presents us with the "classic judicial task of reconciling many laws enacted over time, and getting them to `make sense' in combination." United States v. Fausto, 484 U.S. 439, 453 (1988). In this instance, we can readily reconcile these statutes by interpreting "whoever" in § 201(c)(2) in accordance with the rule stated in Nardone that a general term excludes the United States when such exclusion is necessary to avoid depriving the sovereign of a recognized prerogative or creating an obvious absurdity. To interpret § 201(c)(2) to include the United States would implicitly repeal other statutes and rob the government of its long-standing prerogatives to use immunity and leniency in plea bargaining to obtain truthful testimony from one criminal against another -- testimony that in many cases is essential

6

to the enforcement of law and the promotion of justice. See United States v. Haese, 162 F.3d 359, 367 (5th Cir. 1998) ("Congress did not intend for section 201(c)(2) to be used when prosecutors offer lenity for a witness' truthful testimony. To interpret section 201(c)(2) in any other way would apply shackles to the government in its pursuit to enforce the law" (citation omitted)). Interpreting § 201(c)(2) to apply to the government would also work an obvious absurdity as it would lead to the conclusion that Congress, through statutes such as 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and 18 U.S.C. §§ 6002-6003, is authorizing practices that it has prohibited in 18 U.S.C. § 201(c)(2). Accordingly, we hold that the term "whoever" as used in § 201(c)(2) does not include the United States acting in accordance with its statutory authority to use immunity, leniency, and plea agreements to obtain truthful testimony.

In construing § 201(c)(2) as we do, we join the unanimous conclusion of circuit courts that have ruled over the past year that the government does not violate § 201(c)(2) by granting immunity or leniency or entering into plea agreements to obtain testimony. See United States v. Lara, No. 97-2215, 1999 WL 431140 (1st Cir. June 30, 1999); United States v. Stephenson, No. 98-1490, 1999 WL 437082 (2nd Cir. June 30, 1999); United States v. Haese, 162 F.3d 359, 366-68 (5th Cir. 1998); United States v. Webster, 162 F.3d 308, 357 (5th Cir. 1998); United States v. Ware, 161 F.3d 414, 418-25 (6th Cir. 1998); United States v. Condon, 170 F.3d 687, 689 (7th Cir. 1999); United States v. Johnson, 169 F.3d 1092, 1097-98 (8th Cir. 1999); see also United States v. Flores, 172 F.3d 695, 699-700 (9th Cir. 1999); United States v. Singleton, 165 F.3d 1297, 1299-1302 (10th Cir. 1999) (en banc); United States v. Lowery, 166 F.3d 1119, 1123-24 (11th Cir. 1999); United States v. Ramsey, 165 F.3d 980, 986-91 (D.C. Cir. 1999).

Accordingly, we conclude that the government has not violated 18 U.S.C. § 201(c)(2) in this case in obtaining and presenting the testimony of Richardson's coconspirators against him.

III

Richardson next contends that the district court committed reversible error by failing to ensure that he knowingly waived his right to

testify at trial. After the government had presented its case-in-chief, Richardson's attorney addressed the court, stating:

> My client has indicated to me, despite my advice, that he intends to testify. He's also indicated to me several different ways that he intends to testify, and I am uncomfortable not only from a tactical standpoint, but from an ethical standpoint.
>
> Now, I realize he has an absolute right to testify. I can't prevent him from testifying, nor can the court prevent him from testifying. I simply wanted to put that matter on the record.
>
> I am still hopeful I will be able to persuade him otherwise, but I just wanted to bring that matter to the court's attention.

The court then addressed Richardson as follows:

> Mr. Richardson, as a defendant in this case, you have a constitutional right to remain silent. You are not called upon to produce any evidence. That's your right.
>
> * * *
>
> Do you understand if you choose to testify, you have a right to testify, but you also have a responsibility not to get on the stand and commit perjury? Do you understand that?

Richardson answered affirmatively.

Richardson did not testify at his trial, and the court did not inquire as to why he chose not to testify. Richardson did, however, testify at his sentencing, and, among other complaints, he stated that the only reason that he did not take the stand during his trial was that his attorney erroneously informed him that his mother did not want him to testify. Richardson explained, "The truth was I was misled because I am always going to respect my mother."

Richardson's argument is without merit. He was clearly advised about his constitutional rights both to testify and not to testify, even

8

though a trial court generally has no duty to inform a defendant of his right to testify. See United States v. McMeans, 927 F.2d 162, 163 (4th Cir. 1991). When Richardson chose, on his attorney's recommendation, not to take the stand, the district court was justified in assuming that this was an appropriate strategic decision. The court had no responsibility to investigate whether the true reason behind Richardson's decision was a request falsely attributed to his mother. "Because [Richardson] knew that he could testify if he wanted to, his failure to testify . . . cannot be the product of ignorance of his right. Instead, his failure to testify was of his own choosing; he cannot now approach the court and complain of the result of his decision." Id.

IV

Finally, Richardson contends that his attorney rendered him ineffective assistance by failing vigorously to challenge the amount of drugs attributed to him by the various witnesses who testified that they dealt with him.

A claim of ineffective assistance of counsel should be raised by "[a habeas corpus] motion under 28 U.S.C. § 2255 in the district court and not on direct appeal, unless it `conclusively appears' from the record that defense counsel did not provide effective representation." United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994) (citations omitted). The record before us indicates that a more vigorous cross-examination would not have yielded Richardson any benefit. It appears that it would have been impossible to disprove attribution of enough drugs to make Richardson eligible for anything less than a mandatory life sentence. Counsel would have had to disprove over 90% of the drug amount found by the court in order to give Richardson even a chance of receiving a lesser sentence. We cannot conclude from this record that it "conclusively appears" that Richardson was rendered the ineffective assistance of counsel.

The judgment of the district court is

AFFIRMED.

9