UNITED STATES of America,

v.

Coleman Leake JOHNSON.

No. CRIM. 3:00CR00026.

United States District Court,
W.D. Virginia,
Charlottesville Division.

March 1, 2001.

Thomas K. Bondurant, Jr., Anthony P. Giorno, Assist. U.S. Attorneys, Roanaoke, VA, for U.S.

Frederick T. Heblich, Jr., Charlottesville, VA, Gerald T. Zerkin, Zerkin & Assoc., Richmond, VA; Scott L. Reichle, for defendant.

## MEMORANDUM OPINION

MOON, District Judge.

This matter is before the Court on various motions *in limine* filed by the Defendant, Coleman Leake Johnson. The Court will now address each motion individually.

### I. Defendant's Motion to Strike Aggravating Factors

The Defendant moves the Court to strike statutory aggravating factors (a)[1] and (e),[2] and each of the non-statutory aggravating factors[3] set forth in the Government's Notice of Intent to Seek the Death Penalty ("Notice"). Before addressing the specifics of the Defendant's challenges, it worth while to briefly review the sentencing roles served by the statutory and non-statutory aggravating factors under the Federal Death Penalty Act of 1994 ("FDPA"), 18 U.S.C. § 3591 *et seq.*

The Supreme Court has held that, "[t]o pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'" *Lowenfield v. Phelps,* 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (quoting *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)). The requisite narrowing of death-eligible defendants occurs at the penalty phase of the case.

If a defendant is convicted of a crime for which the death penalty is authorized, the task of determining whether to impose the death penalty will fall upon the jury. The jury must pass through several sequential steps before a sentence of death may be imposed. *See* 18 U.S.C. § 3591 *et seq.; United States v. Davis,* 912 F.Supp. 938 (E.D.La.1996). If the Government fails to carry its burden as to any of the statutorily-prescribed steps, the jury may not consider a sentence of death.

First, the jury must decide the threshold issue of whether the defendant committed the capital offense with the requisite "intent." 18 U.S.C. § 3591(a)(2)(A)-(D). Then, only if the jurors unanimously conclude that one of the four intent criteria outlined in 18 U.S.C. § 3591(a)(2)(A)-(D) has been established beyond a reasonable doubt, can they move on to the second step in the process.

Assuming the jury finds that the defendant acted with at least one of the enumerated mental states, it must then consider the specific statutory aggravating factors for which notice has been given to determine which, if any, exist. *See id.* at § 3592(c). To move on from the eligibility phase to the selection phase, the jury must first find that the existence of at least one statutory aggravating factor was proven beyond a reasonable doubt. *See id.* at § 3593(d).

If the jurors make such a finding, they may then "consider whether any other aggravating factor for which notice has been given exists." *Id.* Further, the defendant may put before the jury proof of any mitigating factors he believes weighs against a sentence of death. *See id.* at § 3592(a). The Government has the burden of estab-

---

1. "Death During the Commission of Another Crime."

2. "Vulnerability of Victim."

3. "Death of the Fetus," "Victim Impact," "Criminal Livelihood," and "Future Dangerousness."

lishing the existence of any aggravating factor beyond a reasonable doubt, and the jury's finding as to that factor must be unanimous. *See id.* at § 3593(c), (d). The Defendant's burden of establishing any mitigating factor is by a preponderance of the information, and unanimity amongst jurors is not required. *See id.*

To assist jurors in distinguishing between those who deserve to be executed and those who do not, the FDPA asks jurors to conduct a balancing analysis and "to consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist." *Id.* at § 3593(e). Based upon this consideration, the jury is required to recommend by unanimous vote whether the defendant should be sentenced to death or life imprisonment. *See id.*

There remain, of course, limits to what information may be presented to the jury during the penalty phase. Given the risk that "the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor," *Jones v. United States,* 527 U.S. 373, 398, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999), the Court will now set forth the standard for assessing, and then individually assess, the adequacy of each of the challenged factors.

■ First, an aggravating factor must not be overbroad. *See Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). "[T]he circumstances may not apply to every defendant convicted of murder; it must apply only to a subclass of defendants convicted of murder." *Id.* (citing *Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993)).

■ Second, the aggravating factor must not be unconstitutionally vague. *See id.* (citing *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)). Vagueness is ascertained by as-

sessing whether an aggravating factor is defined in terms too vague to provide sufficient guidance to the sentencer. *See id.* (citing *Walton v. Arizona,* 497 U.S. 639, 654, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990)). The factor must have "some common-sense core meaning ... that criminal juries should be capable of understanding." *Id.*

■ Third, the aggravating factor must be "sufficiently relevant to the question of who should live and who should die." *Davis,* 912 F.Supp. at 943; see *Arave,* 507 U.S. at 474, 113 S.Ct. 1534; *United States v. Friend,* 92 F.Supp.2d 534, 541 (E.D.Va. 2000). The factor must be "focused on circumstances that are considered by a civilized society to be particularly relevant to the sentencing decision." *Friend,* 92 F.Supp.2d at 541 (internal quotations and citation omitted).

■ Fourth, it is essential that the aggravating factor be measured "in perspective of the fundamental requirement of heightened reliability that is keystone to making 'the determination that death is the appropriate punishment in a specific case.'" *Id.* (quoting *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)). The need for "heightened reliability" in making such a decision is driven by the fact that a death sentence is qualitatively different from any other sentence. *Id.* Heightened reliability comes into play in assessing overbreadth, vagueness, and relevance. As to overbreadth, the requirement of heightened reliability assures that the proposed factor imposes an "inherent restraint on the arbitrary and capricious infliction of the death sentence," and, in so doing, prohibits factors that apply to almost all murders. *Zant,* 462 U.S. at 878, 103 S.Ct. 2733 (citation omitted). As to vagueness, heightened reliability serves to underscore the requirement that the factor must genuine-

ly narrow those eligible for the death penalty, *see id.*, while also serving to foreclose an unacceptable risk of randomness in the sentencing process. *See Tuilaepa*, 512 U.S. at 974–75, 114 S.Ct. 2630; *Friend*, 92 F.Supp.2d at 542. Finally, as to relevance, heightened reliability controls the quality of the information given to the jury in the sentencing phase, thereby assuring that the sentencer only receives evidence which bears on the selection of who, among those eligible for death, should die and who should live. *See Gregg*, 428 U.S. at 192, 96 S.Ct. 2909; *Friend*, 92 F.Supp.2d at 542.

*A. Statutory Aggravating Factors*

1. *Death During Commission of Another Crime*

The Defendant contends that it is improper to use a crime that is predicate of the capital offense itself as a statutory aggravating factor. He argues that the use of the statutory aggravating factor of "Death During Commission of Another Crime," 18 U.S.C. § 3592(c)(1), is improper for it is duplicative of the underlying death-eligible offense, and would impermissibly enable the Government to use the same conduct for the dual purpose of conviction and sentencing. *See United States v. McVeigh*, 944 F.Supp. 1478 (D.Colo. 1996); *United States v. Kaczynski*, 1997 WL 716487 (E.D.Cal.1997). By allowing the jury to weigh as an aggravating factor a crime which they had already necessarily found beyond a reasonable doubt, the Defendant alleges that the jury will begin its weighing process with the scales already tipped toward death. *See McVeigh*, 944 F.Supp. at 1489–90; *Kaczynski*, 1997 WL 716487 at *23. The Defendant further claims that the use of this factor would violate the requirements of relevance and heightened reliability.

■ This Court is not the first to respectfully disagree with the reasoning of the *McVeigh* and *Kaczynski* courts. *See*

*United States v. Frank*, 8 F.Supp.2d 253 (S.D.N.Y.1998); *United States v. Bin Laden*, 126 F.Supp.2d 290 (S.D.N.Y.2001). To begin, "[t]here is nothing wrong with permitting the jury during sentencing to consider crimes for which [the defendant] has been found guilty beyond a reasonable doubt." *Bin Laden*, 126 F.Supp.2d at 301 (quoting *United States v. Cooper*, 91 F.Supp.2d 90, 108–09 (D.D.C.2000)). "This is especially true when Congress has legislated that a defendant's concurrent commission of certain crimes shall be a probative consideration as to the gravity of the murder." *Id.* at 301. By passing 18 U.S.C. § 844(i) and making it a death eligible offense, Congress necessarily made the determination that the offense itself, when resulting in a death, is particularly relevant and related to the decision of who should live and who should die.

■ Further, ignoring the crime at sentencing would be inconsistent with the Supreme Court's capital jurisprudence holding that the jury must take into account the circumstances of the crime in deciding whether to impose the death penalty. *See Frank*, 8 F.Supp.2d at 277 (citing *Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630). "To expect the jury to shut out entirely the circumstances of the underlying offense at the penalty phase blinks reality." *Id.*

■ The jury may take into account as an aggravating factor at sentencing the circumstances of the crime, even if such information necessarily duplicates elements of the underlying offense, so long as that factor is not duplicative of another aggravating factor. *See id.* For once the penalty phase has begun, "the jury [will be] asked to consider only once the fact that the [death] occurred in the course of the commission of another crime." *Id.* The mere fact that the jury may find with relatively ease, based on its guilty verdict,

the existence of the factor does not unfairly tip the scales in favor of death. *Id.* (citing *United States v. Jones,* 132 F.3d 232, 248–49 (5th Cir.1998)) (citation omitted).

The Defendant's concept of total separation of the nature of the underlying crime from sentencing consideration is entirely inconsistent with the preferred practice of submitting the penalty determination to the same jury that decided the guilt phase of the proceeding. *See Bin Laden,* 126 F.Supp.2d at 301. Rather than allowing the jury to speculate or guess as to how it should factor the underlying crime into its sentencing decision, this Court is of the belief that it is far better that the jury be given proper guidance as to how to weigh the connection between the victim's death and the predicate crime. *See id.* For these reasons, the Defendant's motion to strike the "Death During Commission of Another Crime" statutory aggravating factor is hereby denied.

### 2. *Vulnerability of Victim*

While conceding that pregnancy could render a victim vulnerable under select circumstances, the Defendant contends that the victim, Ms. Baker, was not vulnerable under the facts of the present case. The Defendant seeks to have the "Vulnerability of Victim" factor stricken because there was no nexus between Ms. Baker's vulnerability and the crime. In reply, the Government claims, in looking at the plain language of the statute, that a nexus between the vulnerable status of the victim and the physical act that resulted in the murder is not required. This issue is one of first impression in the federal courts.

██ Looking first to the language of the statute, it simply reads "[t]he victim was particularly vulnerable due to age, youth, or infirmity." 18 U.S.C. § 3592(c)(11). On its face, there is no explicit nexus requirement. However, those state courts which have interpreted and applied similar aggravating factors have universally required that the victim's pregnancy-based vulnerability somehow contribute to the victim's injury or death. *See Garner v. State,* 729 So.2d 990, 992 (Fla.App.1999) ("Her physical condition made it difficult, if not impossible for her to defend herself, or duck or run"); *State v. Virdin,* 1999 WL 743988, at *2 (Del.Super.Aug.20, 1999) (a pregnant woman may have an enhanced vulnerability and weakened capacity to resist attack); *State v. Artis,* 316 N.C. 507, 342 S.E.2d 847, 852 (1986) (the victim's pregnancy impacted her physical and mental reactions at the time of the crime, thereby increasing her vulnerability); *State v. Eason,* 67 N.C.App. 460, 313 S.E.2d 221, 224 (1984) (an advanced stage of pregnancy could be viewed as an infirmity which makes the victim vulnerable and relatively defenseless).

No such nexus exists in the present case. The victim was killed instantaneously when the explosive device detonated. Nothing about Ms. Baker's physical condition weakened her capacity to resist the fatal blast. As the court noted in *Garner,* "being pregnant may not make all victims especially vulnerable." 729 So.2d at 992. This is one of those cases. For these reasons, the Defendant's motion to strike the "Vulnerability of Victim" statutory aggravating factor is hereby granted.

### B. *Non-statutory Aggravating Factors*

The Defendant has raised the same general objection to each of the non-statutory aggravating factors. In citing to *United States v. Friend,* he contends that these factors are all defective in that they are not set forth in manner that can be presented to the jury, or by which they can be assessed by this Court for vagueness, overbreadth, relevance, or reliability, or by

which an appellate court can do the same. 92 F.Supp.2d at 542–43.

█ To prevent a return of the time when death sentences were "wantonly and freakishly imposed" and to assure that an aggravating factor does not resurrect the randomness prohibited by *Furman v. Georgia,* 408 U.S. 238, 313, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court has demanded that the jury be furnished with "clear objective standards" providing specific and detailed guidance that make "rationally reviewable the process of imposing a sentence of death." *Friend,* 92 F.Supp.2d at 543 (quoting *Walton,* 497 U.S. at 660, 110 S.Ct. 3047) (citations omitted). In its Notice of Intent to Seek the Death Penalty, the Government lists four non-statutory aggravating factors.[4] As articulated, these factors fail for they are too vague. *See id.* They do not provide adequate guidance to the sentencer as required by *Furman.* The Government shall be granted leave of Court to amend its Notice and to redraft its non-statutory factors in, to use the Defendant's language, "short declarative sentences." [5]

Aside from the general objections detailed above, of the four non-statutory aggravating factors, the Defendant has raised specific objections to only two of them: "Death of the Fetus," and "Criminal Livelihood." The Court will address each of these challenges separately.

### 1. *Death of the Fetus*

The Defendant contends that because the fetus never left the womb and never drew a breath, it is not a person and this proposed non-statutory aggravating factor is therefore inappropriate. The Government counters that the murder of a pregnant woman to destroy a fetus is highly relevant as to the Defendant's character and is the most important circumstance surrounding and the very reason for the subject crime.

As discussed in detail above, the Court has already concluded that the victim's vulnerability does not constitute a statutory aggravating factor under the facts of the present case. In anticipation of and in the event of this ruling, the Government moved in advance to amend its Notice to list "Vulnerable Victim" as a non-statutory factor. Because the victim's vulnerability was not an in issue in the victim's death, the proposed "Vulnerable Victim" factor will not be allowed, even as a non-statutory factor. However, the Court will permit an amendment to the Notice allowing the addition of a non-statutory factor stating that "The Defendant terminated the victim's pregnancy."

█ By allowing this amendment, the Court creates a problem. "Death of the Fetus" and "The Defendant terminated the victim's pregnancy" are impermissibly duplicative. The double-counting of aggravating factors "has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *United States v. McCullah,* 76 F.3d 1087, 1111 (10th Cir.1996). Such skewing occurs because the jury will be presented with an extra aggravating factor on death's side of the scale. *See Bin Laden,* 126 F.Supp.2d at 299–300. "[W]hen the same aggravating factor is counted twice, the defendant is essentially condemned twice for the same culpable act, which is inherently unfair." *McCullah,* 76 F.3d at 1111. To prevent impermissible double-counting, the Court will strike "Death of the Fetus"

4. "Death of the Fetus," "Victim Impact," "Criminal Livelihood," and "Future Dangerousness."

5. The Government should look to the form and structure of the statutory aggravating factors listed in 18 U.S.C. § 3592(c) as a guide when redrafting the non-statutory factors.

as an aggravating factor, but will allow the Government to amend the Notice to include "The Defendant terminated the victim's pregnancy" aggravator.

The Court will now assess the adequacy of "The Defendant terminated the victim's pregnancy" factor based upon the four prong test set forth earlier in this Opinion. First, the aggravating factor must not be overbroad. *See Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630. Because the circumstances of this factor clearly do not apply to every defendant convicted of murder, prong one of the test is satisfied. Second, the aggravating factor must not be unconstitutionally vague. *See id.* The Court is of the belief that the factor will provide sufficient guidance to the jury, and it therefore meets prong two. Third, the aggravating factor must be "sufficiently relevant to the question of who should live and who should die." *Davis*, 912 F.Supp. at 943. The Court believes this factor to be very relevant to such a decision. The Government's evidence is sufficient to show that the motivation for the murder was to kill the fetus so that it would not become a financial liability for the Defendant. We are not involved in the issue of whether a fetus is a human life. Rather, the issue is the right of pregnant woman to carry her fetus to term, and the interest of society therein. While laws exist to protect a woman's right to choose, no laws exist allowing another to make that choice for her. The Court concludes that the termination of a pregnancy by one other than the mother-to-be is considered abhorrent in this society. Fourth and finally, it is essential that the aggravating factor be measured in perspective of the fundamental requirement of heightened reliability which imposes an inherent restraint on the arbitrary and capricious imposition of the death penalty. *See Friend*, 92 F.Supp.2d at 541–42. Because the present factor is highly relevant, individualized, and neither overbroad nor vague, prong four is satisfied. "The Defendant terminated the victim's pregnancy" non-statutory aggravating factor is therefore adequate and will be allowed.

### 2. *Criminal Livelihood*

The Defendant objects to the "Criminal Livelihood" non-statutory aggravating factor on the grounds that it is irrelevant, vague, and in violation of the requirement of heightened reliability. The Government counters that the factor is relevant as to the Defendant's character and is an important factor in determining a sentence.

While there is no *per se* ban on the admission of unadjudicated criminal conduct, *see Tuilaepa*, 512 U.S. at 976, 114 S.Ct. 2630 (approving as an aggravating factor the defendant's participation in prior unadjudicated acts of violence), the Fifth Circuit, in allowing the admission of such evidence under the state capital punishment structure of Texas, warned that its admission "must be watched closely [for it] may implicate other constitutional concerns." *See Milton v. Procunier*, 744 F.2d 1091, 1097 (5th Cir.1984); *see also Williams v. Lynaugh*, 814 F.2d 205 (5th Cir.1987). Heeding this warning, the Court will now assess the adequacy of the "Criminal Livelihood" factor based upon the four prong aggravator test.

First, the aggravating factor must not be overbroad. *See Tuilaepa*, 512 U.S. at 972, 114 S.Ct. 2630. Because not every defendant convicted of murder earns a living by committing criminal acts, prong one of the test is satisfied. Second, the aggravating factor must not be unconstitutionally vague. *See id.* Assuming the Government redrafts this factor in accordance with the instructions provided above in the form of a simple declarative sentence, the Court believes that the factor will provide sufficient guidance to the jury to meet prong two. Third, the aggrava-

ting factor must be "sufficiently relevant to the question of who should live and who should die." *Davis,* 912 F.Supp. at 943. This prong cannot be met. There is nothing about the current factor, and the evidence of non-adjudicated, non-violent conduct presented in support thereof, which the Court finds particularly relevant to the sentencing decision. Having failed prong three of the test, the "Criminal Livelihood" non-statutory aggravating factor will be stricken from the Notice.

## II. Defendant's Motion to Dismiss Indictment and/or to Exclude Testimony of Eric Tarwater and Defendant's Motion to Dismiss Indictment, and/or to Exclude Testimony of Leonard T. Mayle, and/or For Disclosure of Impeaching Information

▮▮▮ The Defendant moves to dismiss the Indictment, or in the alternative, to exclude the testimony of Eric Tarwater and Leonard Mayle, for the reason that their grand jury testimony and prospective trial testimony have been procured in violation of 18 U.S.C. § 201(c)(2). The Defendant contends that Tarwater has received the promise of a reward, spending money, clothes, living quarters, and other assistance. As to Mayle, the Defendant is unsure if he has received "anything of value" from the Government, but suspects that Mayle received assistance from the Government with regard to a probation violation. The Government responds to this "Singleton" argument by claiming that all "things of value" conferred to Tarwater fall with the legitimate prerogative of the sovereign, and that Mayle has been rendered no governmental assistance.

18 U.S.C. § 201(c)(2) provides:

Whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a

witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony ... shall be fined under this title or imprisoned for not more than two years, or both.

Following the Tenth Circuit's panel decision in *United States v. Singleton,* 144 F.3d 1343 (10th Cir.1998), criminal defendants have relied on § 201(c)(2) to argue that the Government is prohibited from entering into any deal with a witness that includes giving testimony against a defendant, despite the fact that the Tenth Circuit, sitting en banc, reversed its earlier position. *See United States v. Singleton,* 165 F.3d 1297 (10th Cir.1999) (en banc). After considering the "Singleton" argument, virtually every circuit court has rejected it. *See United States v. Lara,* 181 F.3d 183 (1st Cir.1999); *United States v. Stephenson,* 183 F.3d 110 (2nd Cir.1999); *United States v. Haese,* 162 F.3d 359, 366–68 (5th Cir.1998); *United States v. Webster,* 162 F.3d 308, 357 (5th Cir.1998); *United States v. Ware,* 161 F.3d 414, 418–25 (6th Cir.1998); *United States v. Condon,* 170 F.3d 687, 689 (7th Cir.1999); *United States v. Johnson,* 169 F.3d 1092, 1097–98 (8th Cir.1999); *see also United States v. Flores,* 172 F.3d 695, 699–700 (9th Cir.1999); *United States v. Lowery,* 166 F.3d 1119, 1123–24 (11th Cir.1999); *United States v. Ramsey,* 165 F.3d 980, 986–91 (D.C.Cir.1999). With its decision in *United States v. Richardson,* 195 F.3d 192 (4th Cir.1999), the Fourth Circuit joined those courts, holding that "the term 'whoever' as used in § 201(c)(2) does not include the United States acting in accordance with its statutory authority to use immunity, leniency, and plea agreements to obtain truthful testimony." *United States v. Anty,* 203 F.3d 305, 308 (4th Cir.2000) (quoting *Richardson,* 195 F.3d at 196–97).

While the *Richardson* court confirmed the Government's ability to use immunity and leniency in plea bargaining, the *Anty* court reaffirmed that 18 U.S.C. § 201(c)(2) does not prohibit the United States from paying fees, expenses, and rewards to informants, even when payment is solely for testimony. *See id.* at 311. In light of the holding of *Anty*, to interpret § 201(c)(2) to preclude the payment of money to witnesses to assist in investigating and prosecuting crimes, by giving truthful testimony, would not only "rob the government of its long-standing prerogative" to do so as established by statute and recognized practice, but it would also "work an obvious absurdity" "in implicitly repealing numerous statutes that authorize the payment of expenses, fees, and rewards[6] to witnesses such as Tarwater". *Id.* (quoting *Richardson*, 195 F.3d at 196–97); *see also Nardone*, 302 U.S. at 383–84, 58 S.Ct. 275. For the reasons, Defendant's Motion to Dismiss Indictment and/or to Exclude Testimony of Eric Tarwater is hereby denied.

 Further, because the Defendant has failed to come forward with any evidence of something of value conferred upon Mayle by the Government in exchange for his testimony, Defendant's Motion to Dismiss Indictment, and/or to Exclude Testimony of Leonard T. Mayle, and/or For Disclosure of Impeaching Information is denied in part. The Government is hereby ordered to immediately disclose any and all *Brady* materials currently within its possession, including but not limited to all payments, benefits, promises, or other things of value provided to Mayle or any other grand jury or prospective trial witness. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

### III. Defendant's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty Because of Race Discrimination and Defendant's Motion for Discovery of Information Pertaining to the Government's Capital Charging Practices

The Defendant, relying heavily upon the "Survey of Federal Death Penalty System (1988–2000)" ("DOJ Study"), seeks discovery in support of his contention that race played a role in the Attorney General's decision to seek the death penalty in his case. The Government counters that statistics alone are insufficient to support the Defendant's claim of racial discrimination in the capital charging process.

 When acting on probable cause that a crime has been committed, a government prosecutor generally enjoys unfettered discretion in the decision whether or not to prosecute. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir.1996). Because law enforcement is "a core executive constitutional function," *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), judicial intrusion into prosecutorial decisions is justi-

---

**6.** The Defendant seeks to distinguish *Richardson* and *Anty* by pointing to the sources of the reward money in the present case in arguing that the term "whoever" applies. It is uncontroverted that the reward money, in which Tarwater may share, has been provided by not only an agency of the United States (Bureau of Alcohol, Tobacco and Firearms), but also an agency of the Commonwealth of Virginia (Virginia State Police), the local government of the Town and County of Louisa, an independent entity (Louisa Crime Solvers), and an individual (Walter Baker). This reward money may be paid to those persons who "provide information leading to an arrest and conviction." Such payment is not "for or because of," or any way contingent upon testimony, so § 201(c)(2) is therefore inapplicable to any reward payments made or to be made in this case.

fied only when the Constitution so requires. *See United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); *Olvis,* 97 F.3d at 743.

 The equal protection component of the Fifth Amendment's Due Process Clause forbids the Government from deciding to prosecute based on a defendant's race. *See Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480; *Olvis,* 97 F.3d at 743; *see also Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). However, "[b]ecause of the great danger of unnecessarily impairing the performance of a core executive constitutional function and the 'presumption of regularity' that supports prosecutorial decisions, a defendant must support a selective-prosecution claim with 'clear evidence.'" *Olvis,* 97 F.3d at 743 (citing *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480 (quoting *United States v. Chemical Found., Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131, (1926))). This standard is intended to be a "demanding" and "rigorous" one. *Armstrong,* 517 U.S. at 465–68, 116 S.Ct. 1480.

 In order to establish a selective-prosecution claim, a defendant must demonstrate that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Olvis,* 97 F.3d at 743; (quoting *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). This requires that the defendant establish both (1) that "similarly situated individuals of a different race were not prosecuted," *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480, and (2) that the decision to prosecute was "invidious or in bad faith." *United States v. Greenwood,* 796 F.2d 49, 52 (4th Cir.1986) (citations omitted).

 Similarly, to obtain discovery in support of a claim of selective-prosecution, a defendant must produce "some evidence" making a "credible showing" of both discriminatory effect and discriminatory in-

tent. *Olvis,* 97 F.3d at 743 (quoting *Armstrong,* 517 U.S. at 468–69, 116 S.Ct. 1480). A significant barrier to the granting of discovery is necessary because discovery "imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution" while it also "diverts governmental resources and discloses prosecutorial strategies." *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480. Thus, just as the standard for establishing a selective prosecution claim is a rigorous one, so too is the corresponding evidentiary threshold for obtaining discovery in support of that claim. *See Olvis,* 97 F.3d at 743 (citing *Armstrong,* 517 U.S. at 468–69, 116 S.Ct. 1480).

 As to discriminatory effect, the Fourth Circuit has held that defendants are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Olvis,* 97 F.3d at 744. Here, the Defendant has failed to offer any, let alone "some evidence," specific to his own case of individuals similarly situated to him, but of a different race, who were not prosecuted. The DOJ Study provides statistical evidence, broken down by race, as to all capital-eligible defendants, and not specifically as to those capital-eligible defendants similarly situated to the Defendant. In failing to provide such information, the DOJ study offers no basis for comparison.

 The Defendant has offered no evidence to supplement the findings of the DOJ Study. Statistical evidence alone cannot establish the discriminatory effect or intent elements of the Defendant's selective-prosecution claim. See *Armstrong,* 517 U.S. at 469–70, 116 S.Ct. 1480; *Olvis,* 97 F.3d at 745–46. It is the opinion of this Court that the DOJ Study, standing alone, is insufficient evidence to make a "credible

showing" of discriminatory effect or discriminatory intent necessary to obtain discovery in the present case. Having failed to carry this initial burden, Defendant's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty Because of Race Discrimination and Defendant's Motion for Discovery of Information Pertaining to the Government's Capital Charging Practices are hereby denied.

## IV. Defendant's Motion In Limine to Exclude Evidence of DNA Test

 Defendant has moved *in limine* to exclude evidence of the DNA test conducted after Ms. Baker's death that confirmed that the Defendant was the baby's father on the ground that this evidence is irrelevant. The Government responds that the DNA test is relevant in that it confirms what both the Defendant and the victim believed to be true.

Evidence is deemed relevant if it has any tendency to make the existence of any determinative fact more probable than it would be absent the evidence. *See* Fed. R.Evid. 401. The DNA evidence is highly relevant as to Defendants's motive. It positively confirms the assumption upon which both the Defendant and Ms. Baker were proceeding. And it was this assumption, along with the resulting prospect of having to pay child support, that allegedly motivated the Defendant to commit the crime charged. Defendant's Motion In Limine to Exclude Evidence of DNA Test is therefore denied.

## V. Defendant's Motion to Allow Allocution Without Cross-examination During Penalty Phase

The Defendant has moved the Court to allow him to allocute before the jury, in an unsworn statement, without cross-examination during the penalty phase. He asserts that has both a statutory and constitutional right to address the jury in this manner. The Government responds that no such right exists.

In *United States v. Barnette,* 211 F.3d 803 (4th Cir.2000), the Fourth Circuit adopted the Fifth Circuit's holding in *United States v. Hall,* 152 F.3d 381 (5th Cir.1998), abrogated in part on other grounds, *United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), in concluding that the Constitution does not afford a criminal defendant the right to make an unsworn statement of remorse before the jury which is not subject to cross-examination. *See Barnette,* 211 F.3d at 820. Further, in dicta, the *Barnette* court went on to state that "[n]either are we of the opinion that Rule 32 has such a requirement." *Id.*

Rule 32(c)(3)(C) provides that, "[b]efore imposing sentence, the court must ... address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed.R.Crim.P. 32(c)(3)(C). According to the Fifth Circuit, compliance with the strict language of the rule is achieved in a capital case when the district court allows the defendant to make a statement to the court after the jury returns its recommendation, but before the district court imposes the sentence. *See Hall,* 152 F.3d at 392. The Defendant responds that the Fifth Circuit's interpretation of Rule 32(c)(3)(C) renders allocution an empty gesture in capital cases because the district court has no discretion to disregard the jury's recommendation.

Section 3593(c) counsels against construing Rule 32(c)(3)(C) as establishing any type of unconditional right for the defendant to make an unsworn statement of remorse to the jury. *See id.* The section sets forth with great specificity the type of information that may be submitted to the jury during the penalty phase of a capital

trial, and the circumstances under which it may be presented. In this regard, the statute provides as follows:

> At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided.... Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

18 U.S.C. § 3593(c).

Construing Rule 32(c)(3)(C) as granting a defendant the unconditional right to make an unsworn statement to the jury would serve to contravene § 3593's mandate that the district court exercise discretion in determining whether to exclude any information offered by the parties on the basis that its probative value "is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id; see Hall,* 152 F.3d at 393. Section 3593(c) does not contemplate exempting any type of information offered at a sentencing hearing from the district court's gatekeeping function. *See Hall,* 152 F.3d at 393.

 There is no impediment to the Defendant testifying in mitigation during the penalty phase of his trial, so long as that testimony is subject to cross-examina-

tion. Further, to adopt the Defendant's argument to construe Rule 32(c)(3)(C) as creating a *per se* right of unsworn allocution before the jury that is not subject to cross-examination would in no way increase the accuracy and reliability of the capital-sentencing process. *See id.* "When the district court receives a statement in allocution, it recognizes the legal effect of the fact that the statements are not sworn and the attendant potential effect of this fact upon the credibility of the defendant's statements; the same cannot be said for a jury." *See id.* For these reasons, the Court concludes that there is no statutory right to allocute before the jury, in an unsworn statement, without cross-examination.

The Defendant raises two additional arguments in support of the present motion. He contends that a denial of his right to allocute at a "meaningful time" would violate his right to procedural due process. He also argues that such a denial would place an unreasonable burden on the right to a jury trial in capital cases. Here, the Defendant is not arguing the existence of an independent constitutional right to allocute, but rather that the denial of this right would result in the alleged constitutional infirmities. These arguments raise issues of first impression.

In *Ashe v. North Carolina,* 586 F.2d 334, 336 (4th Cir.1978), the Fourth Circuit held that "when a defendant effectively communicates his desire to the trial judge to speak prior to the imposition of sentence, it is a denial of due process not to grant the defendant's request." 586 F.2d at 336. The Defendant contends that for this right to be meaningful, a capital defendant must be afforded the opportunity to exercise this right before the sentencing jury. He claims that affording a capital defendant the right to allocute only before the trial judge fails to satisfy due process

for the judge is simply performing the ministerial task of imposing a predetermined sentence.

The Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). An essential component of procedural fairness is the opportunity to be heard. *See id.* The Defendant directs the Court's attention to *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), in which the Supreme Court noted that "the only meaningful opportunity to invoke the discretion of the decision-maker is likely to be before [the decision] takes effect." 470 U.S. at 543, 105 S.Ct. 1487 (citing *Goss v. Lopez,* 419 U.S. 565, 583–84, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)) (citation omitted).

*Loudermill* is an employment case in which the plaintiff was dismissed by letter, and never afforded the opportunity to be heard prior to his discharge. *See Loudermill,* 470 U.S. at 543, 105 S.Ct. 1487. *Goss* is a student discipline case in which students were suspended from school without a hearing to explain their side of the story. *See Goss,* 419 U.S. at 567–70, 95 S.Ct. 729. Here, unlike *Loudermill* and *Goss,* the Defendant is not being denied the opportunity to be heard. Rather, through sworn testimony subject to cross-examination, the Defendant will be afforded a "meaningful opportunity" to invoke the discretion of the sentencing jury if he chooses to testify in mitigation. Further, the Defendant will, in accordance with Rule 32(c)(3)(C), be granted his statutory right to allocute before the imposition of his sentence by this Court. The Court is confident that, through these procedures, Defendant's right to due process will be fully satisfied.

The Defendant next contends that to deny capital defendants the right to allocute before the sentencing jury would place an unreasonable burden on the right to a jury trial in capital cases. He argues that while a capital defendant who waives his right to a jury trial is allowed to allocute under Rule 32(c)(3)(C) before the announcement of the judge's decision, a defendant who exercises his constitutional right to trial by jury is allowed to allocute only after his sentence is determined by the jury.

Defendant, in exercising his right to jury trial, is not waiving his right of allocution. Both a capital defendant who waives his right to trial by jury and the Defendant, who has invoked that right, have the same statutory right to allocute before the district court prior to the imposition of their sentence. The right of allocution is thus in no way contingent upon a capital defendant's assertion of his constitutional right to trial by jury. While it is true that a defendant may not be penalized for asserting a constitutional right, *see United States v. Jackson,* 390 U.S. 570, 582–83, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), that is not the case here for there is no corresponding penalty. The Court therefore concludes that the denial of the right to allocute before the jury does not unconstitutionally burden the right to trial by jury.

For the above stated reasons, Defendant's Motion to Allow Allocution Without Cross-examination During Penalty Phase is hereby denied.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.